744 So.2d 973 (1999)
Philippe H. MORANSAIS, Petitioner,
v.
Paul S. HEATHMAN, an individual, Bromwell & Carrier, Inc., a Florida corporation, Lennon D. Jordan, and J. Larry Sauls, Respondents.
No. 92,199.
Supreme Court of Florida.
July 1, 1999.
Rehearing Denied November 4, 1999.
*974 Alan S. Becker, Steven B. Lesser, and Gary C. Rosen of Becker & Poliakoff, P.A., Fort Lauderdale, Florida, for Petitioner.
C. Geoffrey Vining, Lakeland, Florida, for Respondents.
Lewis N. Brown of Gilbride, Heller & Brown, P.A., Miami, Florida, for the Florida Institute of Certified Public Accountants, Amicus Curiae.
ANSTEAD, J.
We have for review a decision of a district court of appeal certifying the following question to be of great public importance:
WHEN THE ALLEGED DAMAGES ARE PURELY ECONOMIC, CAN THE PURCHASER OF A RESIDENCE, WHO CONTRACTS WITH AN ENGINEERING CORPORATION FOR A PRE-PURCHASE INSPECTION, MAINTAIN A PROFESSIONAL NEGLIGENCE ACTION AGAINST THE LICENSED ENGINEER WHO PERFORMED THE INSPECTION AS AN EMPLOYEE OF THE ENGINEERING CORPORATION?
Moransais v. Heathman, 702 So.2d 601, 602 (Fla. 2d DCA 1997). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
For purposes of analysis, we rephrase the certified question into two questions:
(1) WHERE A PURCHASER OF A HOME CONTRACTS WITH AN ENGINEERING CORPORATION, DOES THE PURCHASER HAVE A CAUSE OF ACTION FOR PROFESSIONAL MALPRACTICE AGAINST AN EMPLOYEE OF THE ENGINEERING CORPORATION WHO PERFORMED THE ENGINEERING SERVICES?
(2) DOES THE ECONOMIC LOSS RULE BAR A CLAIM FOR PROFESSIONAL MALPRACTICE AGAINST THE INDIVIDUAL ENGINEER WHO PERFORMED THE INSPECTION OF THE RESIDENCE WHERE NO PERSONAL INJURY OR PROPERTY DAMAGE RESULTED?
As rephrased, we answer the first question in the affirmative and the second question in the negative. In doing so, we quash the decision below.

PROCEEDINGS TO DATE[1]
In June 1993, petitioner Philippe Moransais contracted to purchase a home in Lakeland, Florida, from Paul S. Heathman. Moransais also contracted with Bromwell & Carrier, Inc. (BCI), a professional engineering corporation, to perform a detailed inspection of the home and to advise him of the condition of the home. The contract was signed for the corporation by one of the respondents, Lennon D. Jordan, as chief of the civil engineering division. Although the contract was signed by Jordan, it did not name as parties the respondents, Jordan and Larry Sauls, who actually performed the inspection in June of 1993. Moransais alleges that he relied on the engineers' inspection *975 and advice to purchase the home and that after the purchase he discovered defects in the home that should have been, but were not, discovered in the engineering inspection, and that such defects rendered the home uninhabitable.
Moransais filed an action against BCI for breach of contract and against Jordan and Sauls for professional negligence as engineers licensed pursuant to chapter 471, Florida Statutes (1993).[2] The complaint alleged no bodily injury or property damage other than the undisclosed and undetected defects in the home. On the motion of Jordan and Sauls, the trial court dismissed the tort actions against the two engineers with prejudice. The trial court relied on Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992), which held that the economic loss rule barred a tort action against an architect by a condominium association where the damages alleged were purely economic and the plaintiff had no direct relationship with the architects. However, in its order the trial court questioned the wisdom of Sandarac and whether the provisions of chapter 471 should require a different result. The trial court also indicated that it would have preferred to follow the Fifth District's holding in Southland Construction, Inc. v. Richeson Corp., 642 So.2d 5 (Fla. 5th DCA 1994), that section 471.023, Florida Statutes (1993), creates a private cause of action for negligence against an individual professional engineer and that such a claim is not barred by the economic loss rule.
On appeal, the Second District affirmed the dismissal under the rationale of its earlier holding in Sandarac. The court held that Moransais had no cause of action against the individual engineers who actually provided the professional engineering services to him. The court explained its reasoning:
To allow a negligence claim against the individual engineers who performed the contract work and with whom Moransais has no traditional professional/client relationship runs afoul of the economic loss rule by allowing Moransais to pursue in tort what amounts to a breach of contract claim and, thereby, expand his remedy for breach of contract beyond that which he agreed to.
We recognize that licensed engineers are not automatically shielded from liability for professional malpractice by virtue of practicing through a corporation or partnership. However, on the facts of the case before us, we do not read chapter 471 to create a separate cause of action against the individual engineers with whom Moransais had no contract and no traditional professional/client relationship. Such a reading would create a duty in negligence that would, in turn, provide a remedy for which no consideration was given.
Moransais, 702 So.2d at 603. However, in light of the Fifth District's contrary holding in Southland Construction and "the continuing uncertainty surrounding the economic loss rule," the court below certified the above question as one of great public importance. Moransais, 702 So.2d at 602.

Liability of Professionals
Under Florida's common law a person who is injured by another's negligence may maintain an action against the other person based on that other person's violation of a duty of due care to the injured person.[3] Further, where the negligent party is a professional, the law imposes a duty to perform the requested services in *976 accordance with the standard of care used by similar professionals in the community under similar circumstances.[4]See Lochrane Engineering, Inc. v. Willingham Realgrowth Inv. Fund, Ltd., 552 So.2d 228, 232 (Fla. 5th DCA 1989); see also Fain, supra note 4, at 35 ("Generally, individuals `performing architectural and engineering services are performing professional services, and the law imposes upon such persons the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances.'").
The court in Lochrane Engineering also explained the difference between a general contractual duty, such as that imposed under an ordinary contract for goods or services, and the distinct duty imposed upon a professional:
The duty of a professional who renders services, such as a doctor, lawyer, or engineer, is different from the duty of one who renders manual services or delivers a product. The contractual duty of one who delivers a product or manual services, is to conform to the quality or quantity specified in the express contract, if any, or in the absence of such specification, or when the duty and level of performance is implied by law, to deliver a product reasonably suited for the purposes for which the product was intended ... or to deliver services performed in a good and workmanlike manner. However, the duty imposed by law upon professionals rendering professional services is to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances.
552 So.2d at 232. That Florida recognizes an action for professional malpractice is also evidenced by the statutory scheme for limitations of actions. Section 95.11, Florida Statutes (1997), reads in pertinent part:
Actions other than for recovery of real property shall be commenced as follows:
. . . .
(4) WITHIN TWO YEARS.
(a) An action for professional malpractice, other than medical malpractice, whether founded on contract or tort.... However, the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional.
§ 95.11(4)(a), Fla. Stat. (1997). A profession, within the meaning of section 95.11, is "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." See Garden v. Frier, 602 So.2d 1273, 1275 (Fla.1992). Under this definition, an engineer is considered a professional, see id. at 1276 n. 5 and, accordingly, has been held liable as such for failure to exercise due care in rendering professional services. See Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979) (involving suit against engineer based on negligently performed tests resulting in economic loss to plaintiff's property); Audlane Lumber & Builders Supply, Inc. v. D.E. Britt Assocs., Inc., 168 So.2d 333 (Fla. 2d DCA 1964) (involving suit against *977 design engineer based on alleged negligent design and preparation of wooden trusses); cf. Ahimsa Technic, Inc. v. Lighthouse Shores Town Homes Dev. Co., 543 So.2d 422 (Fla. 5th DCA 1989) (reversing judgment for breach of contract against engineer where engineer performed services within standard of care required of professional engineers).[5]
The question remains, however, under the Second District's analysis, as to whether Florida recognizes a cause of action based on professional negligence against an individual professional who did not personally contract with the aggrieved party, but who is an employee of the professional services corporation that did contract with the aggrieved party. In other words, is the employee-professional who actually renders the professional services personally liable for the negligent performance of the services? The Second District held that there was no obligation or duty owed by the individual professional to the company's client for the client's economic damages. We disagree.
In this regard, we find our decision in In re The Florida Bar, 133 So.2d 554 (Fla. 1961), as well as the statutory scheme regulating professionals in general, and engineers in particular, to be controlling and instructive. In 1961, the Florida Bar requested our approval of certain amendments to the Integration Rule and Code of Ethics which would allow lawyers to incorporate under the Professional Service Corporation Act. We explained the basic purpose behind the enactment of what is now chapter 621, Florida Statutes (1997):
Chapter 61-64 is similar to statutes recently enacted by the Legislatures of a number of other states. The basic purpose of these enactments is to enable those engaged in various professions to form corporations or associations for the practice of their professions. The statutes apply particularly to numerous professional and other self-employed groups which previously were not permitted to incorporate. Traditionally, the so-called learned professions have not been permitted to practice as corporate entities. The principal reason for this change in attitude regarding these professional groups appears to arise out of the provisions of the Internal Revenue Code of 1954, which permit an employer to establish a pension fund for the benefit of his employees.
133 So.2d at 555 (citations omitted). After consideration, this Court agreed to permit lawyers to form professional associations in accordance with the legislative enactment. In this regard, we stated:
Traditionally, prohibition against the practice of a profession through the corporate entity has been grounded of the *978 essentially personal relationship existing between the lawyer and his client, or the doctor and his patient. This necessary personal relationship imposes upon the lawyer a standard of duty and responsibility which does not apply in the ordinary commercial relationship. The non-corporate status of the lawyer was deemed necessary in order to preserve to the client the benefits of a highly confidential relationship, based upon personal confidence, ability, and integrity. If a means can be devised which preserves to the client and the public generally, all of the traditional obligations and responsibilities of the lawyer and at the same time enables the legal profession to obtain a benefit not otherwise available to it, we can find no objection to the proposal.

Id. at 556 (emphasis supplied). In other words, we approved the practice of law in a corporate form subject to the express recognition that under the common law, a lawyer who renders professional services owes a duty of care regardless of the fact that the lawyer is an associate or partner in a business entity that contracts to provide professional services to the injured party.
That Florida recognizes the responsibility of individual professionals for their negligent acts is also evidenced by the express provisions of two legislative enactments that are relevant here-section 471.023, Florida Statutes (1993), pertaining to engineers, and section 621.07, Florida Statutes (1993), pertaining to professional associations. Both of these statutory provisions permit professionals to practice in the form of a corporation or partnership for the purpose of rendering professional services. However, both sections indicate an intent to hold professionals personally liable for their negligent acts by expressly stating that the formation of a corporation or partnership shall not relieve the individual members of their personal professional liability.
Section 621.07 of the Professional Service Corporation Act ("Act"), states in pertinent part:
Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict, or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct; provided, however, that any officer, agent, member, manager, or employee of a corporation or limited liability company organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct supervision and control, while rendering professional service on behalf of the corporation or limited liability company to the person for whom such professional services were being rendered....
§ 621.07, Fla. Stat. (1997). Similarly, section 471.023(3) expressly applies to engineers and states in pertinent part:
(3) The fact that a registered engineer practices through a corporation or partnership shall not relieve the registrant from personal liability for negligence, misconduct, or wrongful acts committed by him.... Any officer, agent, or employee of a corporation shall be personally liable and accountable only for negligent acts, wrongful acts, or misconduct committed by him or committed by any person under his direct supervision and control, while rendering professional services on behalf of the corporation.
§ 471.023(3), Fla. Stat. (1993). These statutes expressly recognize the common law duty of a professional.
An illustration of the application of section 621.07 is provided in Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n, 539 So.2d 1131 (Fla. 1989). Gershuny sued the professional association *979 for malpractice due to injuries caused by a nurse anesthetist. In our review, we noted:
[U]nder section 621.07, the group of physicians comprising the Association could be held personally liable in their capacity as physicians only if the negligence or wrongful act was committed by them or by someone under their direct supervision and control. Otherwise, the liability of the physicians is no greater than that of a shareholder-employee of any domestic business corporation.
Id. at 1132. Because the record indicated that the nurse anesthetist was not supervised by any physician-shareholder, no physician-shareholder was accountable for the nurse's negligence, and therefore only the association could be held liable under the circumstances. Id. at 1132-33. Obviously, the implication of our ruling was that had the circumstances been different, i.e., had a physician-shareholder supervised the nurse anesthetist, then the physician-shareholder, as well as the association, would be liable under section 621.07.
We believe the same principles apply in this case. Like lawyers in a law firm who render legal services for the firm's client, respondents Jordan and Sauls were designated by their employer to perform engineering services for Moransais. It is alleged that in performing these professional services they negligently failed to detect and disclose certain defects in the condition of the home ultimately purchased by Moransais. The fact that neither man signed the contract between Moransais and the engineering firm is of no moment where, as here, both Jordan and Sauls were responsible for performing professional services to a client of their company whom they reasonably knew or should have known would be injured if they were negligent in the performance of those services. Obviously some professional engineer would actually have to perform the professional services that BCI agreed to provide, and Jordan and Sauls were being compensated for such services to Moransais and other clients of BCI.
Further, the fact that both engineers were employees of a corporation does not shield them from liability in this case since both section 471.023 and section 621.07 make clear that professionals shall be individually liable for any negligence committed while rendering professional services. It is apparent that the legislature, in enacting these provisions, clearly intended to affirm the common law pertaining to professional services and the common law liabilities flowing from the negligent performance of such services. See § 621.07, Fla. Stat. (1997). Under the circumstances in this case, therefore, we find that Moransais may assert a cause of action against the individual engineers based on a common law theory of negligence in the rendition of professional services despite the lack of a direct agreement between Moransais and Jordan and Sauls. Accordingly, we disagree with the Second District's resolution of this issue.

Economic Loss Rule
Having recognized that a cause of action for professional negligence exists against the individual engineers, the question remains whether the economic loss rule bars such claims where there are no personal injuries or property damage other than the defects in the home inspected. We hold that it does not.
The exact origin of the economic loss rule is subject to some debate and its application and parameters are somewhat ill-defined. However, in its simplest form, we note that the rule appeared initially in both the state and federal courts in product liability type cases. In Southland Construction, Inc., the Fifth District fairly assessed the rule:
The "economic loss" rule is a court-created doctrine which prohibits the extension of tort recovery for cases in which a product has damaged only itself and there is no personal injury or damage to "other property," and the losses or damage are economic in nature. The *980 debate joined in by Prosser and other tort experts was whether or not to expand a manufacturer's tort liability to encompass economic losses. They argued that the only remedy in such cases should be for breach of contract or breach of warranty. The Florida Supreme Court adopted this doctrine for this state in Casa Clara Condominium Ass'n., Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993) and AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla. 1987).
642 So.2d at 7 (footnotes omitted). The essence of the early holdings discussing the rule is to prohibit a party from suing in tort for purely economic losses to a product or object provided to another for consideration, the rationale being that in those cases "contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 902 (Fla. 1987); see also Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628 (Fla. 1995); Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993); AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987).
We must acknowledge that our pronouncements on the rule have not always been clear and, accordingly, have been the subject of legitimate criticism and commentary.[6] In Florida Power & Light, the seminal case on the applicability of the economic loss rule, Florida Power & Light (FPL) sued Westinghouse for breach of express warranties in the contract and for negligence, all arising from leaks discovered in six steam generators manufactured by Westinghouse for sale to FPL. In its analysis and conclusion that the negligence claim was barred, this Court relied on the reasoning in two cases, both of which involved damages to defective products. See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (holding that a manufacturer of a defective steam turbine is not liable under a theory of negligence or strict liability where the only injury is to the product itself); Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145, 151 (1965) (holding that a manufacturer of a defective product is not subject to strict liability where the damages are purely economic). We agreed with the economic loss rule discussed in those cases and held that the rule barred FPL's negligence claim where there was no physical injury or property damage other than to the generators themselves, and that contract principles rather than tort principles would be adequate and fair to resolve any claims for the purely economic losses to the products provided by Westinghouse. 510 So.2d at 902. We reasoned that the contracting parties were in the best position to have anticipated potential problems with the items provided and could have adequately protected their respective interests through measures such as the applicable warranty law, "negotiation and contractual bargaining," or insurance. Id. Our holding in Florida Power & Light remains sound in its adherence to the fundamental principles of the precedents we relied upon in applying the so-called economic loss rule.
Unfortunately, however, our subsequent holdings have appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent. For example, in AFM Corp., we extended the economic loss rule to preclude a negligence claim arising from breach of a service contract in a nonprofessional services context. In that case, AFM contracted with Southern Bell for a referral service for AFM's customers. However, *981 Southern Bell mistakenly listed the wrong telephone number in its yellow pages and inadvertently disconnected the referral system by giving a different customer AFM's old telephone number. Because AFM's damages resulted from a breach of the underlying contract and not any independent tort, we held that AFM was limited to contractual remedies only. 515 So.2d at 181. In other words, we held that a purchaser of services could not recover purely economic loss due to negligence arising from a breach of contract where the purchaser has not shown the commission of a tort independent of the breach itself. Id.[7] While we continue to believe the outcome of that case is sound, we may have been unnecessarily over-expansive in our reliance on the economic loss rule as opposed to fundamental contractual principles.
In Airport Rent-A-Car and Casa Clara, we again considered the application of the rule in product liability type cases. In Casa Clara, we held that the economic loss rule barred a cause of action in tort for providing defective concrete where there was no personal injury or damage to property other than to the product itself. 620 So.2d at 1246. Our opinion, however, was not unanimous, especially as to our characterization of "other property." We stated that tort law was designed to protect the interest of society as a whole by imposing a duty of reasonable care to prevent property damage or physical harm to others, whereas contract law operates to protect the economic expectations of the contracting parties when a "product" is the object of the contract. Id. at 1236. We also stated expansively in Casa Clara that "[w]hen only economic harm is involved, the question becomes `whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies.'" Id. at 1247.[8] In Airport Rent-A-Car, we followed the reasoning in Casa Clara in holding the economic loss rule barred a cause of action for negligence against the manufacturer of defective buses where the only damage alleged was to the buses themselves. 660 So.2d at 630-31.
More recently this Court has recognized the danger in an unprincipled extension of the rule, and we have declined to extend the economic loss rule to actions based on fraudulent inducement and negligent misrepresentation. See PK Ventures, Inc. v. Raymond James & Assocs., 690 So.2d 1296 (Fla.1997) (negligent misrepresentation); HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996) (fraudulent inducement). In HTP, Ltd., we held that a claim for fraudulent inducement constituted a tort independent from the underlying contract and, therefore, was not barred by the economic loss rule. We also noted:
The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a beach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.
685 So.2d at 1239; see also Woodson v. Martin, 685 So.2d 1240 (Fla.1996). We relied on this reasoning in PK Ventures, wherein we held that the economic loss rule did not preclude a cause of action by *982 the buyer of commercial property against the seller's broker for negligent misrepresentation. 690 So.2d at 1297. Both HTP, Ltd. and PK Ventures demonstrate our recent determination to limit the application and reach of the economic loss rule.
It is also important to note that we have been faced with other situations where the economic loss rule was not applied to bar actions in tort for purely economic losses including cases involving a special relationship between a professional and third parties who might be affected by the professional's negligent acts. In First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla.1990), we recognized a cause of action for negligent misrepresentation. There, First Florida Bank sued Mitchell, an accountant, who had prepared a financial statement which misstated the assets of Mitchell's client, C.M. Systems, and which failed to disclose C.M. Systems' significant debt. Relying on the financial statement, the bank lent sums to C.M. Systems, which it never repaid. Accordingly, the bank sued Mitchell in negligence based on his misrepresentations in the financial statement. On appeal, we addressed whether the lack of contractual privity between the bank and Mitchell precluded a cause of action against the accountant for the inaccurate financial statements. After recognizing an erosion in the privity requirement in cases involving negligently manufactured products, negligently constructed building projects,[9] negligently performed legal services,[10] and negligently prepared land abstracts,[11] we held that the absence of privity should not bar a cause of action against an accountant who negligently prepares a financial statement by those persons whom the accountant knows will rely on the statement. 558 So.2d at 13-15. In so holding, we adopted the rationale of section 522 of the Restatement (Second) of Torts (1976),[12] which set forth the circumstances for negligent misrepresentation.
Similarly, in First American Title Insurance Co., we held that where a land abstractor prepares an abstract and should reasonably expect that his client will "provide it to third persons for purposes of inducing those persons to rely on the abstract... the abstractor's contractual duty to perform the service skillfully and diligently runs to the benefit of such known third parties." 457 So.2d at 472. Like Max Mitchell, liability in this case hinged on the supplying of misinformation to those whom the abstractor reasonably knew would be affected by his statements in the abstract. Although the decisions in Max Mitchell and First American Title Insurance Co. do not specifically address the economic loss rule, the reasoning and outcomes are clearly inconsistent with the doctrine's applicability to such circumstances.
The situations in HTP, Ltd., PK Ventures, A.R. Moyer, Max Mitchell, and *983 First American Title Insurance Co. serve as reminders of the distinct limitations of the economic loss rule. Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit actions in the product liability context,[13] and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not be invoked to bar well-established causes of actions in tort, such as professional malpractice.
We agree with the observations of those who have noted that because actions against professionals often involve purely economic loss without any accompanying personal injury or property damage, extending the economic loss rule to these cases would effectively extinguish such causes of action. See Schwiep, supra note 6, at 40 ("[I]f the doctrine were genuinely applied to bar `all tort claims for economic losses without accompanying personal injury or property damage,' the rule would wreak havoc on the common law of torts."); Blanche M. Manning, Legal Malpractice: Is it Tort or Contract?, 21 Loy. U. Chi. L.J. 741, 742 (1990) ("Because attorney malpractice rarely results in personal injury or property damage, the damages plaintiffs seek most often in malpractice claims against attorneys are for economic or pecuniary losses allegedly caused by the attorney's failure to exercise adequate care."). This is not what this Court had in mind many years ago when it applied the economic loss rule in Florida Power & Light.
While provisions of a contract may impact a legal dispute, including an action for professional services, the mere existence of such a contract should not serve per se to bar an action for professional malpractice. Further, the mere existence of a contract between the professional services corporation and a consumer does not eliminate the professional obligation of the professional who actually renders the service to the consumer or the common law action that a consumer may have against the professional provider. While the parties to a contract to provide a product may be able to protect themselves through contractual remedies, we do not believe the same may be necessarily true when professional services are sought and provided. Indeed, it is questionable whether a professional, such as a lawyer, could legally or ethically limit a client's remedies by contract in the same way that a manufacturer could do with a purchaser in a purely commercial setting. In any case, we conclude that the principles underlying the economic loss rule are insufficient to preclude an action for professional malpractice under the circumstances presented here.

CONCLUSION
Accordingly, we hold that the economic loss rule does not bar a cause of action against a professional for his or her negligence even though the damages are purely economic in nature and the aggrieved *984 party has entered into a contract with the professional's employer. We also hold that Florida recognizes a common law cause of action against professionals based on their acts of negligence despite the lack of a direct contract between the professional and the aggrieved party. Accordingly, we quash the decision below and approve Southland.
It is so ordered.
HARDING, C.J., and SHAW and PARIENTE, JJ., concur.
WELLS, J., concurs with an opinion, in which PARIENTE, J., concurs.
OVERTON, Senior Justice, dissents with an opinion.
WELLS, J., concurring.
I concur with the well-reasoned majority opinion. I write, however, to state directly that it is my view that the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product. I would recede from AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla.1987), because that opinion erroneously applies the economic loss rule and has given rise to confusion as to the rule's applicability.
PARIENTE, J., concurs.
OVERTON, Senior Justice, dissenting.
I dissent and find that this case is controlled by our recent decision in Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla. 1993). In Casa Clara, this Court explained the distinction between tort and contract actions and the resulting application of the economic loss rule to maintain that distinction. The Court stated:
Thus, the "basic function of tort law is to shift the burden of loss from the injured plaintiff to one who is at fault ... or to one who is better able to bear the loss and prevent its occurrence." Barrett, supra at 935. The purpose of a duty in tort is to protect society's interest in being free from harm, Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985), and the cost of protecting society from harm is borne by society in general. Contractual duties, on the other hand, come from society's interest in the performance of promises. Id. When only economic harm is involved, the question becomes "whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies."
Id. at 1246-47 (quoting Sidney R. Barrett, Jr., Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C. L.Rev. 891, 933 (1989)).
In Casa Clara, the defendant had contracted to supply concrete for the construction of condominiums. That concrete contained a high salt content that caused reinforcing rods to rust and the concrete to break off. The plaintiff Casa Clara Condominium Association brought tort actions against the supplier of that concrete. The trial court, district court of appeal, and, finally, this Court applied the economic loss rule in dismissing those causes of action. This Court held:
Therefore, we again "hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage." Florida Power & Light, 510 So.2d at 902. If we held otherwise, "contract law would drown in a sea of tort." East River, 476 U.S. at 866, 106 S.Ct. at 2300. We refuse to hold that homeowners are not subject to the economic loss rule. [Footnote 8]
[Footnote 8:] Numerous other jurisdictions have also refused to give greater tort remedies to homeowners. E.g., Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del.Supr.Ct.1992); Redarowicz v. Ohlendorf, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); Sensenbrenner *985 v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 374 S.E.2d 55 (1988); Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 745 P.2d 1284 (1987).
Id. at 1247.
In this case, the plaintiffs contracted with an engineering corporation to perform an inspection before purchasing the property for residential occupancy. The report allegedly was defective in that it contained no disclosure concerning the condition of the air conditioning, the electrical system, or the roof. The plaintiffs purchased the property and then found that the defects made the house uninhabitable. They brought suit for breach of contract against the engineering firm and also brought individual suits in tort against the firm's engineering employees who did the inspection, asserting that they were guilty of professional malpractice. The plaintiffs' complaint alleges no bodily injury or property damage. While the suit for breach of contract against the firm was proper, the district court of appeal applied Casa Clara and found no cause of action in tort, applying the Casa Clara principles. I emphasize the plaintiffs still have causes of action against both the engineering firm and the seller for the problems that they discovered.
In my view, there is absolutely no logical basis to justify a recovery in tort to the property owners in this case when no tort recovery was allowed to the property owners against the concrete supplier for defective concrete in Casa Clara.
It appears to me that the majority has substantially obliterated the distinction between contract and tort causes of action, and, in addition, has effectively overruled our rather recent decision in Casa Clara without saying so.
If I understand the majority opinion correctly, it means that if there is an express written contract for legal services with a law firm then the aggrieved client may bring causes of action upon the same facts on the basis of (1) a breach of contract and (2) multiple tort claims for malpractice individually against each lawyer who had anything to do with the case.
Justice Parker Lee McDonald, in Casa Clara, explained the economic loss rule and made clear that it helped make the demarcation between contract and tort. After this decision, for all practical purposes, there will be no real distinction except that tort will be the preferred basis for a cause of action with a contract action being just a collateral proceeding.
In all probability, the immediate effect of this majority opinion will be an increase in malpractice insurance rates and the resulting increased costs of all types of professional services to the consumers. By its holding, the majority is spreading the cost of the losses among the public as a whole instead of requiring contracting parties to protect themselves in their contracts. There is no public need or necessity for this result because all parties have a basis for a claim under the contract they bargained for. It appears that this Court wants to give them more and spread the cost to the public.
Finally, I disagree with Justice Wells' concurring opinion, but I do believe that for the purposes of stability of the law this Court should make clear when a contract limits the parties to an action based upon contract law.
I would affirm the district court of appeal in its application of Casa Clara to this case.
NOTES
[1] The facts in this case are set forth in greater detail in the opinion below.
[2] Moransais also filed a lawsuit against the seller, Heathman, alleging breach of contract and fraud. The claims against the seller are not at issue in this case.
[3] Under the traditional definition of negligence, to state a cause of action the plaintiff must allege the existence of a legal duty on the part of the defendant to protect the plaintiff from injury, the failure of the defendant to perform this duty, and that the injury or damage to the plaintiff resulted from such failure. See 38 Fla. Jur.2d Negligence § 156 (1998).
[4] See Constance Frisby Fain, Architect and Engineer Liability, 35 Washburn L.J. 32, 34 (1995) (noting that aggrieved party must show that the professional owed a duty to the aggrieved party, that the professional breached that duty, that the breach was both the factual and legal cause of the injury, and that the aggrieved party suffered actual damages). In this regard, Florida's standard jury instructions define professional negligence as follows:

Negligence is the failure to use reasonable care. Reasonable care on the part of the [the professional] is that degree of care which a reasonably careful [professional] would use under like circumstances. Negligence may consist either in doing something that a reasonably careful [professional] would not do under the like circumstances or in failing to do something that a reasonably careful [professional] would do under like circumstances.
Fla. Std. Jury Instr. (Civil) 4.2c (Negligence of a lawyer, architect, other professional).
[5] This Court and other appellate courts of Florida have also expressly held that the fact that a professional engineer does not have contractual privity with the injured party does not necessarily relieve the engineer of his or her liability for any negligence committed while performing professional services. See, e.g., Conklin v. Cohen, 287 So.2d 56 (Fla. 1973) (noting that privity of contract is not a prerequisite to liability; architect and engineer may be liable in negligence to third parties for personal injuries for failing to exercise ordinary skill of profession despite lack of contractual privity); A.R. Moyer, Inc. v. Graham, 285 So.2d 397, 402 (Fla.1973) (holding that third party who may be injured or sustain economic loss caused by negligent performance of contractual duty of architect has cause of action against architect notwithstanding absence of privity); Southland Constr., 642 So.2d at 9 (holding that engineers who negligently perform a professional engineering service, knowing that another person would be injured if the service is negligently performed, is liable in tort despite contractual privity between parties); Moore v. PRC Eng'g, Inc., 565 So.2d 817, 820 (Fla. 4th DCA 1990) (holding that engineering firm and its agent "may be liable for negligence in supervising construction resulting in personal injuries notwithstanding the absence of privity between the engineer and the injured person"); Luciani, 372 So.2d at 531 (holding that engineer is liable not only to those in privity, but also "those third persons who might foreseeably be injured as a result of his negligence"); Geer v. Bennett, 237 So.2d 311, 316 (Fla. 4th DCA 1970) (holding that architect is liable to third person injured on premises despite lack of contractual privity).
[6] See Paul J. Schwiep, The Economic Loss Rule Outbreak: The Monster That Ate Commercial Torts, Fla. B.J. 34 Nov. 1995 at 34, 36-38.
[7] In so holding, we recognized that our conclusion contradicted our earlier opinion in A.R. Moyer, Inc. v. Graham, which upheld a cause of action against an architect for economic losses suffered as a result of the architect's negligence in rendering professional services. We resolved this apparent inconsistency by distinguishing Moyer on the ground that "supervisory responsibilities vested in the architect carried with it a concurrent duty not to injure foreseeable parties not beneficiaries of the contract." AFM Corp., 515 So.2d at 181; see also Airport Rent-A-Car, 660 So.2d at 631 (noting same).
[8] This Court also appeared to limit the decision in A.R. Moyer to the specific facts in that case. See id. at 1248 n. 9.
[9] See A.R. Moyer, 285 So.2d at 402.
[10] See Angel, Cohen, & Rogovin v. Oberon Inv., N.V., 512 So.2d 192 (Fla.1987).
[11] See First American Title Ins. Co. v. First Title Serv. Co., 457 So.2d 467 (Fla.1984).
[12] Section 552 reads in pertinent part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends to influence or knows that the recipient so intends or in a substantially similar transaction.
Restatement (Second) of Torts § 552 (1976) (quoted in Max Mitchell, 558 So.2d at 12).
[13] We note that other jurisdictions have addressed the economic loss rule in relation to professional malpractice claims against architects and have reached contrary results. See City Express, Inc. v. Express Partners, 87 Hawai`i 466, 959 P.2d 836 (1998) (holding that plaintiff may not recover purely economic losses against architect for professional negligence where plaintiff contracted with architect); 2314 Lincoln Park West Condominium Ass'n. v. Mann, Gin, Ebel & Frazier, Ltd., 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990) (holding that economic loss rule bars cause of action in tort for professional malpractice against architect); but see Robinson Redevelopment Co. v. Anderson, 155 A.D.2d 755, 547 N.Y.S.2d 458 (1989) (holding that economic loss rule does not bar negligence claim against architect).