ON MOTION FOR REHEARING
 

 CORTIÑAS, J.
 

 On consideration of appellant, Gerhardt M. Witt’s, motion for rehearing, rehearing en banc, or certification of this Court’s opinion filed June 10, 2009, we grant rehearing, withdraw our prior opinion and issue the following opinion in its stead:
 
 [1]
 

 Appellant, Gerhardt M. Witt, seeks review of a final judgment holding him per
 
 *1036
 
 sonally liable for damages in excess of four million dollars to La Gorce Country Club, Inc. (“La Gorce”) as well as the trial court’s non-allocation of fault to ITT Industries, Inc. (“ITT”)
 
 [2]
 
 as a
 
 Fabre
 

 [3]
 

 defendant. Also consolidated with this case is La Gorce’s appeal of the portion of the same final judgment which awarded it no damages on its counts against ITT for fraud in the inducement and violation of the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”).
 
 [4]
 

 In 1999-2000, La Gorce began exploring options to irrigate its golf course using a reverse osmosis water treatment system as an alternative to the municipal water supply. In January 2000, La Gorce met with ITT regarding the water treatment project. ITT introduced Witt, a professional geologist licensed in Florida, to La Gorce, advising them that ITT had previously worked with Witt on another project involving reverse osmosis. Witt submitted a proposal to provide hydrogeologic consulting services and ITT submitted a proposal to design and build a reverse osmosis water treatment plant. La Gorce and ITT eventually entered into a design-build contract for the reverse osmosis system (the “ITT Agreement”) and Witt’s Company, Gerhardt M. Witt and Associates, Inc. (“GMWA”), entered into various contracts with La Gorce for consulting services and the overall project coordination (collectively the “GMWA Agreements”). These agreements between GMWA and La Gorce each contained the following limitation of liability provision:
 

 In recognition of the relative risks and benefits of the project to both La Gorce and [GMWA], the risks have been allocated such that La Gorce agrees, to the fullest extent permitted by law, to limit the liability of [GMWA] and its subcon-sultants to the total dollar amount of the approved portions of the scope for the project for any and all claims, losses, costs, damages of any nature whatsoever or claims expenses from any cause or causes, so that the total aggregate liability of [GMWA] and its subconsultants to all those named shall not exceed the total dollar amount of the approved portions of the Scope or [GMWA’s] total fee for services rendered on this project, whichever is greater. Such claims and causes include, but are not limited to, negligence, professional errors or omissions, strict liability, breach of contract or warranty.
 

 Throughout the design and construction of the project, many problems arose, including issues with water quality, and the proper operability of the water treatment system. ITT and La Gorce attempted to address these issues via the execution of a particular change order. Because of the numerous technical problems that occurred during the design and building of the system, ITT continued to make modifications through 2003. The system was eventually completed, delivered to La Gorce, and began operating. During the fourteen-month period the system was in use, its performance deteriorated and ultimately, the system failed completely.
 

 La Gorce filed suit against Witt, GMWA, and ITT. La Gorce’s complaint was later amended, and alleged 1) fraud in the in
 
 *1037
 
 ducement against ITT, 2) aiding and abetting fraud in the inducement by Witt and GMWA, 3) violation of FDUTPA by ITT and GMWA, 4) professional malpractice by Witt and GMWA, and 5) breach of the GMWA Agreements by GMWA. Pursuant to section 44.104, Florida Statutes (2006), the parties agreed to try the case before a trial resolution judge. After a two-week trial, the trial resolution judge issued findings of fact and conclusions of law that were later incorporated by the circuit court into its final judgment. The conclusions of law pertinent to this appeal include the trial judge’s determination that Witt and GMWA were liable to La Gorce for professional malpractice, but that the limitation of liability provision applied only to GMWA, and the conclusion that La Gorce failed to prove fraud in the inducement and violation of FDUTPA by ITT.
 

 I. Standard of Review
 

 The trial resolution judge’s findings of fact are not reviewable on appeal.
 
 See
 
 section 44.104(11), Florida Statutes (2008) (“Factual findings determined in the voluntary trial are not subject to appeal.”). However, we review questions of law, including those pertaining to contract interpretation, de novo.
 
 See Peach State Roofing Inc. v. 2224 S. Trail Corp.,
 
 3 So.3d 442, 445 (Fla. 2d DCA 2009) (citing
 
 Leopold v. Kimball Hill Homes Fla., Inc.,
 
 842 So.2d 133, 136 (Fla. 2d DCA 2003));
 
 Amica Mut. Ins. Co. v. Drummond,
 
 970 So.2d 456, 459 (Fla. 2d DCA 2007).
 

 II. The Limitation of Liability Provision
 

 In determining that Witt was personally hable for professional negligence but was outside of the protection of the limitation of liability clause, the trial judge concluded:
 

 This damage limitation is not applicable to Witt’s liability for malpractice. I find it is not applicable both because he was not a party to the agreements and, therefore, not entitled to the benefit of any such limitation, and because
 
 [Moransais v. Heathman,
 
 744 So.2d 973 (Fla.1999) ] ... suggests that, “it is questionable whether a professional, such as a lawyer, could legally or ethically limit a client’s remedies by contract in the same way that a manufacturer could do with a purchaser in a purely commercial setting.”
 
 Moransais,
 
 at p. 983.
 

 Florida law recognizes a cause of action against an individual professional geologist for professional negligence, irrespective of whether the geologist practices through a corporation. More specifically, section 492.111, Florida Statutes (2005), provides in pertinent part, as follows:
 

 The fact that a licensed professional geologist practices through a corporation or partnership shall not relieve the registrant from personal liability for negligence, misconduct, or wrongful acts committed by her or him. Partnership and all partners shall be jointly and severally liable for the negligence, misconduct, or wrongful acts committed by their agents, employees, or partners while acting in a professional capacity. Any officer, agent, or employee of a corporation shall be personally liable and accountable only for negligent acts, wrongful acts, or misconduct committed by her or him or committed by any person under her or his direct supervision and control, while rendering professional services on behalf of the corporation. ... The corporation shall be liable up to the full value of its property for any negligent acts, wrongful acts, or misconduct committed by any of its officers, agents, or employees while they are engaged on
 
 *1038
 
 behalf of the corporation in the rendering of professional services.
 

 § 492.111(4), Fla. Stat. (emphasis added).
 

 Witt argues that although he may be liable for professional negligence, any such liability is capped by the limitation of liability provisions present in the GMWA Agreements. We disagree. Even assuming, for argument’s sake, that Witt, in his individual capacity, was covered by the limitation of liability provisions, such a limitation would be unenforceable as a matter of law. Section 492.111(4), Florida Statutes;
 
 see Moransais,
 
 744 So.2d 978. While there are no Florida cases which specifically address whether such a limitation provision extends to an individual professional, the Florida Supreme Court’s decision in
 
 Moransais
 
 is instructive.
 
 [5]
 

 In
 
 Moransais,
 
 the Florida Supreme Court considered the question of whether the economic loss doctrine barred a negligence action to recover purely economic loss in a case where the defendant was neither a manufacturer nor distributor of a product and there was no privity of contract.
 
 Moransais,
 
 744 So.2d 973.
 
 Moransais
 
 involved a dispute between a home buyer and the engineering firm hired to perform an inspection of the home prior to purchase. The contract between the engineering firm and the buyer contained a provision limiting the firm’s liability to $50,000.00.
 
 [6]
 
 The engineering firm prepared a report for the buyer but failed to disclose defects, later discovered by the buyer, which rendered the home uninhabitable.
 
 Id.
 
 at 974-75. The buyer sued the engineering firm, and the two individual engineers that actually performed the inspection and prepared the report, for professional negligence.
 
 Id.
 
 The appellate court affirmed the dismissal of the buyer’s counts against the individual engineers, but the Florida Supreme Court reversed and held that:
 

 [T]he economic loss rule does not bar a cause of action against a professional for his or her negligence even though the damages are purely economic in nature and the aggrieved party has entered into a contract with the professional’s employer. We also hold that Florida recognizes a common law cause of action against professionals based on their acts of negligence despite the lack of a direct contract between the professional and the aggrieved party.
 

 Id.
 
 at 983-84.
 

 Although not specifically addressing whether an individual professional is insulated by a limitation of liability provision, the Florida Supreme Court’s analysis of the economic loss rule in the context of a claim of professional negligence highlights the extra-contractual nature of such a claim. The Florida Supreme Court has expressly limited the applicability of the economic loss rule to two different circumstances:
 

 The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. The second is when there is a defect in a
 
 *1039
 
 product that causes damage to the product but causes no personal injury or damage to other property.
 

 Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,
 
 891 So.2d 532, 586 (Fla.2004) (emphasis added).
 
 See also Cessna Aircraft Co. v. Avior Techs., Inc.,
 
 990 So.2d 532, 537 (Fla. 3d DCA 2008);
 
 Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.,
 
 903 So.2d 251, 255-56 (Fla. 3d DCA 2005).
 

 This “prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort.”
 
 Indem. Ins. Co.,
 
 891 So.2d at 536. Moreover, when discussing the exemptions to the economic loss rule, the Florida Supreme Court, citing
 
 Moransais
 
 as an example, stated that “[ajnother situation involves cases such as those alleging neglect in providing professional services, in which this Court has determined that public policy dictates that liability not be limited to the terms of the contract.”
 
 Indem. Ins. Co.,
 
 891 So.2d at 537. In
 
 Moransais,
 
 the Florida Supreme Court tacitly acknowledged that an extra-contractual remedy against a negligent professional is necessary because contractual remedies in such a situation may be inadequate.
 
 Moransais,
 
 744 So.2d at 983 (“While the parties to a contract to provide a product may be able to protect themselves through contractual remedies, we do not believe the same may be necessarily true when professional services are sought and provided”). By allowing a professional negligence claim against an individual on common law and statutory grounds, and finding that the doctrine designed to prevent “parties to a contract from circumventing the allocation of losses set forth in the contract” does not preclude such a claim, the Florida Supreme Court implicitly acknowledged that claims of professional negligence operate outside of the contract.
 

 Under the facts of this case, a cause of action in negligence exists irrespective, and essentially, independent of a professional services agreement, as evidenced by section 492.111(4) and
 
 Moransais,
 
 and, therefore, we find that the limitation of liability provision was, as a matter of law, invalid and unenforceable as to Witt.
 

 III. ITT as a Fabre Defendant
 

 Witt argues that the trial resolution judge failed to properly conduct a
 
 Fabre
 
 allocation of fault as to ITT. Section 768.81, Florida Statutes (2005), provides in pertinent part, that “[i]n order to allocate any or all fault to a nonparty and include the named or unnamed nonparty on the verdict form for purposes of apportioning damages, a defendant must prove at trial, by a preponderance of the evidence, the fault of the nonparty in causing the plaintiffs injuries.” § 768.81(3)(e), Fla. Stat. (2005). Prior to trial, Witt amended its affirmative defenses to allege contribution by ITT pursuant to section 768.81. However, there were no findings of fact or conclusions of law by the trial resolution judge that Witt proved either ITT’s fault at trial or the propriety of allocation of fault against ITT. Furthermore, based upon the record, it appears that the allocation of fault was not requested by Witt until after the final judgment was rendered. As such, we find that the trial resolution judge did not err by not making a
 
 Fabre
 
 allocation against ITT.
 
 See Nash v. Wells Fargo Guard Servs., Inc.,
 
 678 So.2d 1262, 1263-64 (Fla.1996).
 

 IV. The Counts of Fraud in the Inducement and Violation of FDUTPA Against ITT
 

 The trial resolution judge made no specific findings of conduct rising to the level of fraud or deceptive trade practices by ITT. In order to show fraud in the
 
 *1040
 
 inducement by ITT, La Gorce would necessarily have had to prove that ITT 1) misrepresented a material fact, 2) knew or should have known of the falsity of the statement, 3) intended that the misrepresentation would induce La Gorce to rely and act on it and 4) that La Gorce suffered injury in justifiable reliance on the misrepresentation.
 
 Biscayne Invs. Group,
 
 903 So.2d 251. Whether a party has made intentional fraudulent misrepresentations is a question of fact.
 
 See D & M Jupiter, Inc. v. Friedopfer,
 
 853 So.2d 485 (Fla. 4th DCA 2003);
 
 Jenne v. Broward Serv. Ctr., Inc.,
 
 717 So.2d 585, 586 (Fla. 4th DCA 1998). Once La Gorce presented evidence as to the elements of fraud in the inducement, it was within the fact finder’s province to determine whether fraud existed.
 
 See Lou Bachrodt Chevrolet, Inc. v. Savage,
 
 570 So.2d 306, 308 (Fla. 4th DCA 1990). The trial resolution judge found that ITT did not make certain misrepresentations of fact alleged by La Gorce, and, regardless, reliance on any such misrepresentations would not have been justified.
 
 [7]
 
 Although these findings appear under the title “Conclusions of Law,” the characteristic of a factual finding is not altered by the mere labeling as a conclusion of law.
 
 See Kinney v. Dep’t of State, Div. of Licensing,
 
 501 So.2d 129, 132 (Fla. 5th DCA 1987).
 

 Whether conduct constitutes an unfair or deceptive trade practice is also a question for the fact finder.
 
 See Suris v. Gilmore Liquidating, Inc.,
 
 651 So.2d 1282 (Fla. 3d DCA 1995) (“[Plaintiff] alleged sufficient misrepresentation and deceptive non-disclosure on [defendant’s] part to, at the very least, create a jury question concerning the deceptive or misleading nature of [defendant’s] acts under the FDUTPA.”);
 
 Deltona Corp. v. Jannotti,
 
 392 So.2d 976, 978 (Fla. 1st DCA 1981) (Finding that on the facts adduced, “the jury was capable of determining whether [defendant] committed unfair trade practices, within the meaning of the statute, based on the instruction” which tracked the language of the statute on unfair and deceptive trade practices.);
 
 see also Urling v. Helms Exterminators, Inc.,
 
 468 So.2d 451, 453-54 (Fla. 1st DCA 1985) (“[A]ecumulation of the ... evidence creates a jury question as to the nature of the act under [FDUTPA].”). Although categorizing its findings under the title “Conclusions of Law,” the trial resolution judge found that a review of the evidence yielded no support to the assertion that ‘Witt, GMWA, and ITT were sufficiently deceptive or unfair or ... misled La Gorce under the circumstances of this case.” Moreover, in assessing the evidence presented, the trial judge concluded that although “[t]he trial evidence supports the conclusion that although [ITT] designed a system which did not perform as promised, they [sic] do not rise to the level of unfair or deceptive practices against a consumer acting reasonably under the circumstances.” Pursuant to section 44.104(11), Florida Statutes, we are bound by the factual findings of the trial resolution judge. Absent any findings clearly indicating fraudulent conduct by ITT which induced La Gorce to enter into the ITT Agreement, or any findings of conduct rising to the level of unfair and deceptive trade practices, we affirm the trial judge’s conclusions.
 

 Based on the foregoing, we affirm the final judgment.
 

 Affirmed.
 

 [1]
 

 . La Gorce Country Club, Inc. also filed a motion for rehearing, which we deny.
 

 [2]
 

 . Waterlink Technologies, Inc., was the entity that originally entered into a design-build contract with La Gorce. Waterlink was bought by ITT during the course of the project. For ease of reference, Waterlink is referred to as "ITT” throughout this opinion, as ITT is the named party in La Gorce's appeal.
 

 [3]
 

 .
 
 See Fabre v. Marin,
 
 623 So.2d 1182, 1185 (Fla.1993).
 

 [4]
 

 . Sections 501.201-.213, Florida Statutes (2005).
 

 [5]
 

 . We note, as did the trial resolution judge, that in
 
 Florida Power & Light v. Mid-Valley, Inc.,
 
 763 F.2d 1316 (11th Cir.1985), the Eleventh Circuit Court of Appeals extended a limitation of liability/exculpatory provision to an individual engineer. However, at the time of the
 
 Florida Power
 
 decision, there was no Florida decision addressing the statutory or common law negligence action against an individual professional.
 
 Moransais,
 
 which addressed such issues, was decided by the Florida Supreme Court fourteen years after
 
 Florida Power.
 

 [6]
 

 . The Florida Supreme Court opinion does not specify that the limitation of liability provision was present in the agreement, but this fact appears in the original opinion of the Second District.
 
 See Moransais v. Heathman,
 
 702 So.2d 601, 602 (Fla. 2d DCA 1997).
 

 [7]
 

 . Moreover, there were no findings of fact that ITT intended that any misrepresentations it made would induce La Gorce’s reliance.