PARIENTE, J.,
concurring.
I concur with the majority’s principled conclusion that the economic loss rule is limited to the products liability context. I write to address Justice Canady’s assertion in dissent that the Court’s decision represents a “dramatic unsettling of Florida law,” dissenting op. at 413 (Canady, J.), and to explain that the majority’s conclusion is fully consistent with the development of this Court’s jurisprudence on the applicability of the economic loss rule in Florida.
*408 The majority’s conclusion that the economic loss rule is limited to the products liability context is not a departure from precedent, but instead simply represents the culmination of the Court’s measured articulation of the economic loss rule’s original intent. This view has been expressed various times, starting in Moransais v. Heathman, 744 So.2d 973 (Fla.1999), where Justice Wells stated his belief that “the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product” and that some of the Court’s prior decisions had produced “confusion as to the rule’s applicability.” Id. at 984 (Wells, J., concurring). Justice Wells, joined by Justice Lewis and myself, similarly explained in Comptech International, Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219, 1227 (Fla.1999) (Wells, J., concurring), that “in order to clarify the application of the economic loss rule,” the Court should “expressly state that its application is limited to product claims.” Today, the Court has done so. This decision provides clear guidance to the lower courts as to the meaning of the economic loss rule in Florida and is both doctrinally principled and consistent with the trajectory of our prior precedent.
Our decision is neither a monumental upsetting of Florida law nor an expansion of tort law at the expense of contract principles. To the contrary, the majority merely clarifies that the economic loss rule was always intended to apply only to products liability cases. See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So.2d 532, 541 (Fla.2004) (“In exchange for eliminating the privity requirements of warranty law and expanding the tort liability for manufacturers of defective products which cause personal injury [by adopting strict products liability], we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself.”). This is because the rule itself acts merely as a specific articulation of the proper approach for those products liability cases in which contract principles, rather than tort principles, are best suited for resolving the claim. See Fla. Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 901-02 (Fla.1987) (citing with approval several district courts of appeal cases holding that strict liability applies only where the plaintiff has suffered personal injury or damage to other property and explaining that “contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage”).
The majority’s conclusion that the economic loss rule is limited to the products liability context does not undermine Florida’s contract law or provide for an expansion in viable tort claims. Basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and, contrary to the assertions raised in dissent, our clarification of the economic loss rule’s applicability does nothing to alter these common law concepts. For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim. See Lewis v. Guthartz, 428 So.2d 222, 224 (Fla.1982) (holding that there must be a tort “distinguishable from or independent of [the] breach of contract” in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co., 482 So.2d 518, 519 (Fla. 3d DCA 1986) (“[A] breach of contract, alone, cannot constitute a cause of action in tort.... It is only when the breach of contract is attend *409 ed by some additional conduct which amounts to an independent tort that such breach can constitute negligence.” (citations omitted)).
While the contractual privity form of the economic loss rule has provided a simple way to dismiss tort claims interconnected with breach of contract claims, it is neither a necessary nor a principled mechanism for doing so. Rather, these claims should be considered and dismissed as appropriate based on basic contractual principles— a proposition we reaffirmed in American Aviation, where we stated that “when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss.” Am. Aviation, 891 So.2d at 542. The majority’s decision does not change this statement of law, but merely explains that it is common law principles of contract, rather than the economic loss rule, that produce this result.
The economic loss rule is not a longstanding common law rule that has always existed in our jurisprudence to define the parameters of cognizable contract and tort causes of action, but is instead a doctrine that arose in the torts context to serve a specific purpose — to curb potentially unbounded liability following the adoption of strict products liability. Indeed, we explicitly noted in American Aviation that “[t]he economic loss rule adopted in Florida Power represents this Court’s pronouncement that, notwithstanding the theory of strict liability adopted in West [v. Caterpillar Tractor Co., 336 So.2d 80, 92 (Fla.1976) ], strict liability has not replaced warranty law as the remedy for frustrated economic expectations in the sale of goods.” Am. Aviation, 891 So.2d at 541. Accordingly, I believe that limiting the rule to the specific context from which it developed is principled because it prevents unnecessary complexity in the law and restricts the rule’s application to its “genuine, but limited, value in our damages law.” Id. at 542 (quoting Moransais, 744 So.2d at 983). In other words, as we first recognized in Moransais, “fundamental contractual principles” already properly delineate the general boundary between contract law and tort law. Moransais, 744 So.2d at 981. Application of the economic loss rule to serve this function outside the products liability context simply allows for the possibility of confusion, overuse, and the restriction of well-established common law remedies.
Indeed, this is exactly what has happened since we first adopted the economic loss rule in Florida. Over time, the rule has been inadvertently extended to cover situations outside the context of products liability. See id. at 980 (“Unfortunately, however, our subsequent holdings have appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent.”). Not only has this proved unworkable, as the majority aptly notes, but it is outside the original intent of the rule and, indeed, of our prior decisions. In my view, Justice Canady’s assertion in dissent that the majority’s conclusion “repudiates our case law,” dissenting op. at 411 (Canady, J.), is not borne out by a close examination of the history of our economic loss rule cases.
We have repeatedly explained that the expansion of the economic loss rule beyond products liability to cover situations in which the parties are in privity of contract is best illustrated by AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180, 181 (Fla.1987), where the Court held that there was “no basis for recovery in negligence” since the plaintiff could not *410 prove that “a tort independent of the breach [of contract] itself was committed.” The Court subsequently indicated, however, that its decision in AFM “may have been unnecessarily over-expansive” in its “reliance on the economic loss rule as opposed to fundamental contractual principles.” Moransais, 744 So.2d at 981. In 2004, we receded from AFM “to the extent that it relied on the principles adopted by this Court in Florida Power.” Am. Aviation, 891 So.2d at 542. Therefore, since we essentially receded in American Aviation from this overexpansion of the rule, we need not specifically overrule any case today in order to explicitly clarify that the economic loss rule applies only to products liability cases.
Justice Canady points most recently to Curd v. Mosaic Fertilizer, LLC, 39 So.3d 1216 (Fla.2010), and American Aviation, as indicating that the contractual privity application of the economic loss rule is settled Florida law. While those two cases did list this application of the rule in reviewing its history, the contractual privity use of the economic loss rule was not at issue in either of those cases. See Curd, 39 So.3d at 1223; Am. Aviation, 891 So.2d at 541. Curd simply restated general language from American Aviation, and American Aviation used AFM, from which it later partially receded, to illustrate how the contractual privity form of the rule has been applied.
In the aftermath of American Aviation, which clearly stated an intent to “expressly limit[ ]” the economic loss rule, American Aviation, 891 So.2d at 542, it was no longer clear whether our decisions permitted application of the rule to situations involving contractual privity. We now eliminate once and for all any confusion in the application of the economic loss rule remaining since Moransais and clearly espouse Justice Wells’ view that “the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product.” Moransais, 744 So.2d at 984 (Wells, J., concurring). Far from upsetting firmly established principles, therefore, our decision resolves any ambiguity remaining from this line of cases and restores the economic loss rule to its principled roots. I concur fully in the majority’s well-reasoned decision.
LEWIS and LABARGA, JJ., concur.