990 So.2d 532 (2008)
CESSNA AIRCRAFT COMPANY, Appellant,
v.
AVIOR TECHNOLOGIES, INC., et al., Appellees.
No. 3D07-299.
District Court of Appeal of Florida, Third District.
June 11, 2008.
Rehearing and Rehearing En Banc Denied September 4, 2008.
*534 Knoblock, Kim, Coxhead & Penton and John S. Penton, Jr., Miami; Diaz Reus Rolff & Targ and Carlos F. Gonzalez, for appellant.
Kluger, Peretz, Kaplan & Berlin and Andrew P. Gold, Miami, and Dianne O. Fischer; Joel S. Perwin, for appellees.
Before COPE and SALTER, JJ., and SCHWARTZ, Senior Judge.
SALTER, J.
Cessna Aircraft Company appeals a jury verdict and final judgment awarding $5,414,619 to Avior Technologies and Avtech Executive Flight Center for breach of contract, negligence, professional negligence, and negligently supplying false information for the guidance of others. Avtech cross-appeals a remittitur of its contract damages against Cessna to $60,567 based on a written limitation of liability provision. We find that the economic loss rule applies to the tort claims and therefore reverse the trial court's judgment on those counts. We affirm the lower court's order for remittitur on Avtech's breach of contract claim against Cessna.

The Aircraft and Repair Efforts
Avior was the owner of a 1978 Cessna Citation II jet aircraft ("Aircraft"). Avior also owned, through subsidiaries, an FAA-licensed[1] air charter company and Avtech, an FAA-licensed aircraft maintenance and service center. The companies operated together at an airport in Georgia. Michael Nearing owned all of the stock of Avior, served as president of Avior and Avtech, and controlled each of them. The air charter company contracted with third parties for flights aboard the Aircraft. These flights generated revenue to pay debt and insurance on the Aircraft, insurance, salaries, and other expenses.
In April 1999, the Aircraft suffered damage while being towed from its hangar to the tarmac. The Aircraft was flown to Cessna's service center in Kansas for repair, and Cessna filled out a service order for the work. The service order, signed by an authorized representative of Avtech, contained a limitation of liability provision: "Cessna obligation, under any warranty which may be applicable, is limited to repair *535 or replacement of defective parts and/or workmanship." The service order also contained a representation by the signator "that he has full authority to bind the owner or operator of the Cessna Citation Aircraft described herein and authorizes the services described herein to be performed." The owner of the Aircraft, Avior, never disclaimed that representation or the binding effect of the terms within that service order (and later service orders on the same printed form). To the contrary, Nearing used Avior letterhead to fax his concerns about the repairs to Cessna, and Avior paid Cessna for those charges that were not covered by an insurer.
The Aircraft was initially with Cessna from April to August 1999. After completion of the repairs necessitated by the tug accident, Cessna noted problems with a loss of pressurization during flight and reported this to the Avior or Avtech representatives.[2] Because Avior or Avtech had previously scheduled to have the Aircraft repainted at another location, the Aircraft was removed from the Cessna service center and taken to the paint facility in early August 1999.
Avtech attempted to solve the pressurization problem at its own facility. After several months of unsuccessful effort, Avtech also found fuel leaks from the wing into the belly of the Aircraft. A representative of Cessna visited Avtech's facility in Georgia in late December 1999, and the Aircraft was then flown back to Cessna's service center in Kansas. Another service order, containing the same printed terms as the initial service order, was signed by Avtech's maintenance employee on December 22, 1999. The handwritten "services requested" were "evaluate fuel leak & repair." Cessna did further work and the Aircraft was returned to service in mid-January 2000.
On February 17, 2000, Nearing wrote a letter (on Avtech letterhead) to a representative of Cessna to thank him "for your help in resolving our pressurization/leakage problems on [the Aircraft]." Nearing noted that "the aircraft has been back in service now for almost three weeks without any grounding leaks."
On April 25, 2000, however, fuel was once again discovered in the belly of the Aircraft and it was returned to the Cessna service facility. Cessna concluded that the Aircraft had suffered an overload or a hard landing during its extensive operation (some 22 years, at that point). A series of delays followed while Avior's insurer evaluated the problems with the Aircraft and the anticipated costs of repair. Nearing asked Cessna for assurances that it could repair the fuel leak, and Cessna reported that it could only make such assurances if it replaced the wings on the Aircraft. The insurer refused to pay for that expense, ascribing the problem to wear and tear, and Cessna therefore did not proceed with the wing replacement.
One of the two mortgage-holders on the Aircraft, Gibraltar Bank, commenced an action to foreclose its second lien on the Aircraft in August 2000. The other mortgage-holder, *536 Textron, then foreclosed its first lien.[3] Avior and Avtech brought third-party claims in the foreclosure action to seek recoveries from Cessna and the insurers.
Avior and Avtech (but, as previously noted, identified by the single defined term "Avior" in each count against Cessna) asserted claims for breach of contract, negligence, professional negligence, and negligently providing false information for the reliance of others. Cessna argued at various stages of the proceedings that the economic loss rule precluded the tort claims. Cessna moved for directed verdict on Avior's contract claim and Avtech's negligence claim. The trial court granted both motions, but allowed a jury to hear all of Avior's tort claims and Avtech's contract claim. Following the jury's award of damages to Avior and Avtech in the full amount described by Avior's damages witness,[4] Cessna moved for remittitur on Avtech's contract claim. The motion was granted. This appeal and cross-appeal followed.

The Breach of Contract Claims
The service orders executed between Cessna and Avtech (for itself and Avior) contain a provision limiting Cessna's liability, a standard remedy limitation under the Uniform Commercial Code. See § 672.719, Fla. Stat. (1999); Metro. Dade County v. Worsham Bros., 563 So.2d 1107, 1108 (Fla. 3d DCA 1990).[5] Avtech and Avior have held themselves out to be agent and principal, respectively, throughout the underlying litigation, and whatever claims Avtech may have had were assigned to Avior in any event.
But having alleged in the Fourth Amended Complaint, and having argued in opposition to Cessna's motion to the directed verdict, that Avior was in contractual privity with Cessna, Avior now asserts that Cessna's argument was well taken (there was no Avior-Cessna contract) and that Cessna is estopped to rely on the limitation of damages provision as to Avior. We disagree.
The law of agency is as flexible as the inconsistent positions taken by the parties over the course of the litigation. Avtech as agent could (and did) bind Avior as principal to the terms of the service order. Avtech could bring suit in its own name for the benefit of Avior if authorized by Avior, or Avior could bring such an action in its own name. But under any scenario, Avtech as agent lost any separate standing to sue on its own behalf for the breach of the contract when the principal brought an action in its own name. Media Placement, Inc. ex rel. Church by the Sea v. Combined Broadcasting, Inc., 638 So.2d 105, 106 (Fla. 3d DCA 1994). Moreover, Avtech alleged in its pleadings that it had assigned all of its rights to Avior. With those rights, of course, went the service order's provision limiting liability. Avior was and is bound by the allegations of its pleadings alleging the benefits of the service *537 orders (attaching and incorporating them, for example). Those allegations by Avior are accepted as facts without the necessity of further proof. Fernandez v. Fernandez, 648 So.2d 712, 713 (Fla.1995); City of Deland v. Miller, 608 So.2d 121, 122 (Fla. 5th DCA 1992).
A review of the argument of counsel on the motion for directed verdict does not disclose any waiver of the limitation of remedy or economic loss rule arguments by Cessna. Cessna's argument was that only one entity or the other, not both, could make a claim, and that the claim would be circumscribed by both the service order limitation on damages and the economic loss rule applicable to any alleged tort. Cessna argued for the dismissal of all remaining claims and counts against it by both claimants, but acknowledged that one of the two, Avior or Avtech, would have a contract claim. Because a maintenance representative of Avtech signed the purchase orders, Cessna argued that Avtech should be that single claimant. The trial court agreed, but did not accept Cessna's economic loss rule argument.
Neither side has established that an estoppel or "gotcha!"[6] rule applies to the various allegations in the pleadings and arguments of counsel involved here. We find no prejudice to either side occasioned by those alternative pleadings and arguments. See State Farm Mut. Auto. Ins. Co. v. Smalley Transp. Co., 696 So.2d 522, 523 (Fla. 3d DCA 1997). We hold that Avior and Avtech alike were bound, as a matter of law, by the limitation of damages provision in the service order required by Cessna before it agreed to work on the Aircraft.

The Economic Loss Rule and the Appellees' Tort Claims
We turn next to the tort claims. Whether any common law duty of care, or any professional duty, exists in this case is a question of law to be reviewed by us de novo. L.A. Fitness Int'l, LLC v. Mayer, 980 So.2d 550, 557 (Fla. 4th DCA 2008). The Avior/Avtech tort counts were claimed to arise out of the same operative facts as the breach of contract countsCessna's alleged delays, misadvice, and failed repairs relating to the Aircraft.
In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla.2004), the Florida Supreme Court reiterated that contracting parties must use traditional contract remedies to redress their purely economic losses:
The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.... In this state, the economic loss rule has been applied in two different circumstances. The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. The second is when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property.
This case is an example of the first category of circumstances. One important purpose of the economic loss rule (ELR) is to prevent parties to agreements from "circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort" and thereby "seeking to obtain a better bargain than originally made." Id. at 536. Clearly the ELR bars the simple negligence and "negligent provision of information for the guidance of others" claims in this case.
*538 With regard to the Avior and Avtech claims for professional negligence, however, such claims are a recognized exception to the ELR. Moransais v. Heathman, 744 So.2d 973, 983 (Fla.1999). We therefore next consider whether any such duty existed and, if so, whether competent substantial evidence established any breach of that duty.
In Florida, when a company contracts to provide professional services, the individual professional employee conducting those services has a duty to render those services according to the standard of care used by similarly situated professionals. Id. at 975-76 (emphasis added). If the professional does not exercise due care, and is not a signatory to the contract, he or she may be personally liable in tort. Id. Thus, the economic loss rule does not bar relief in tort against individual professionals who were not parties to the underlying contract. Id. at 983.
Here, however, no individual professionals were named as defendants in the Fourth Amended Complaint. The professional negligence claim is reflected in a caption as "included" in the simple negligence claim (Count II), and the allegations refer generally to billings for "engineering professional services" without identifying any engineering discipline, any individual engineer, or any applicable engineering standard or practice.
Similarly, no licensed engineer testified at trial regarding any departure from any specific engineering standard or practice, whether in Kansas, Georgia, Florida, or otherwise. The appellees' engineering expert had impressive credentials, but his opinions did not include any judgment that any engineer working for Cessna departed from any professional duty or standard. He candidly admitted that he was not a maintenance expert.
Simply stated, the contract here was to repair a used Aircraft suffering from mechanical problems, under an agreement similar to a service contract signed at an auto mechanic's garage.[7] Absent a specific lapse by a specific professional, Avior and Avtech could not establish an exception to the ELR.
We therefore reverse the verdict and judgment in favor of Avior and Avtech on the tort claims and remand the case to the trial court for the entry of judgment in favor of Cessna on those claims.

Remittitur, Cross-Appeal, and Limitation of Damages
In the cross-appeal, we affirm the remittitur limiting damages to those allowed by the service orders$60,567, the amounts paid by the appellees for the parts and work. We find that the provision is mutual, unequivocal and reasonable and was properly applied by the trial court. As explained, it also limits any damages recoverable by Avior. See Metro. Dade County v. Worsham Bros., 563 So.2d 1107, 1108 (Fla. 3d DCA 1990).

Other Arguments
The parties raised other arguments as well. For example, Cessna argued that its motion for mistrial should have been granted because of improper and prejudicial closing argument by counsel for the appellees, and the appellees argued that Cessna was required to plead "contractual limitation of damages" as an affirmative defense. The appellees also argued that *539 the contractual limitation of damages provision caused the service order to "fail of its essential purpose."
Regarding Cessna's argument, the trial judge did not abuse his discretion in denying the motion for mistrial and in making a curative statement to the jury.[8]
We disagree with Avior/Avtech's argument that Cessna waived the contractual limitation of remedy provision because it failed to raise that issue as an affirmative defense. No reported Florida case appears to have imposed such a requirement, and Florida Rule of Civil Procedure 1.110(d) does not include the issue in a list of 19 representative affirmative defenses. It seems fair and logical that once a plaintiff sues to enforce a contract, both sides are on notice of any limitation on damages expressly agreed to by them in that very document.
Finally, we reject Avior/Avtech's argument that the plaintiffs were improperly prevented from arguing that the limitations of damages provision caused the contractual remedies to fail of their essential purposes. Cessna raised the issue before trial, and Avior/Avtech did not move to preclude reliance on the contractual provision or for a continuance.
Two of the cases cited by Avior and Avtech, Typographical Service, Inc. v. Itek Corp., 721 F.2d 1317 (11th Cir.1983), and Lennar Homes, Inc. v. Masonite Corp., 32 F.Supp.2d 396 (E.D.La.1998), are cases in which limitations of damages provisions were enforced, not disregarded. Two other cases addressed unique problems (not evident here) relating to conflicting bodies of law,[9] or a family's purchase of a motor home with a service contract and additional federal trade commission remedies.[10] In contrast, this case involves sophisticated commercial parties, a straightforward limitations provision, and no conflicting legal or contractual terms. We sense, as the jury obviously did, the appellees' frustration with the pressurization and fuel leak problems, but of course the appellees were always at liberty to take the Aircraft to other repair facilities, or to negotiate a specific delivery date or a more expansive warranty for any repairs. The record and applicable law do not support the contention that the limited remedy provision failed of its essential purpose. Cessna did not bargain to provide a new Aircraft for Avior/Avtech, or to assure a certain level of income if the efforts at repair were unavailing.

Conclusion
We reverse those portions of the trial court's order awarding Avior and Avtech any recovery in tort and remand with instructions to the trial court to direct a verdict for Cessna on those counts. We affirm that part of the trial court's order for remittitur on Avtech's contract damages. Because of Avtech's assignment of rights to Avior and the agency, we hold that Avior is the correct party to recover the reduced award of $60,567 (before prejudgment interest).
Affirmed in part, reversed in part, and remanded with instructions.
SCHWARTZ, Senior Judge concurs.
*540 COPE, J. (dissenting).
I respectfully dissent.
The appellant Cessna Aircraft Company made a different set of arguments in the trial court than the arguments advanced on appeal. In the trial court, Cessna successfully argued that Avior Technologies, Inc. was not a signatory to the contract and had no rights under the contract, even though Avior was the owner of the aircraft. Cessna took the position that Avior was merely a shareholder of Avtech and as a mere shareholder, had no rights under the contract. This argument overlooked the fact that Avior is also the owner of the aircraft. Cessna successfully argued that the contract claim of Avior should be dismissed, and that the only appropriate analysis regarding Avior, a non-signatory to the contract, would be the analysis set forth for contract non-signatories in Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532 (Fla.2004). Accepting Cessna's premise that Avior (as owner) had no contract rights, the trial court took the entirely reasonable position that Cessna would owe the owner a duty of due care. Based on the arguments actually presented, any error was invited. See Sheffield v. Superior Ins. Co., 800 So.2d 197, 202 (Fla.2001) ("Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal.") (quoting Goodwin v. State, 751 So.2d 537, 544 n. 8. (Fla.1999)).[*]
NOTES
[1] Federal Aviation Administration.
[2] The service orders and other communications between Cessna and the Avior/Avtech companies did not indicate with uniformity or clarity which of the two companies was directing the repairs. Because Nearing was president of each company and authorized the service orders, his communication with Cessna on one occasion on Avtech letterhead, and on another occasion on Avior letterhead, merely confirms that both companies authorized Cessna's work and accepted or ratified the service order provisions. Paragraph 12 of the Fourth Amended Complaint states that Avtech assigned any and all rights against Cessna to Avior, and that the term "Avior" includes Avtech. In each claim against Cessna, "Avior" referred to both Avior and Avtech.
[3] Ultimately the first and second liens totaled over $1,680,000, and the Aircraft was sold in partial satisfaction of that indebtedness.
[4] The witness testified that Avior's and Avtech's damages included, remarkably, lost profits of $2,837,275 (though the companies had never made a profit according to their federal income tax returns, and the operating figures for the Aircraft in isolation excluded interest costs), and the lost value of the Aircraft, $1,989,439 (though the principal of the mortgages on the Aircraft was not properly deducted). Our rulings on the limitation of damages and economic loss rule spare us from further analysis of these flawed computations.
[5] The parties apparently did not address below, so we will not, the applicability of Kansas law (where the service orders were signed and delivered).
[6] Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3d DCA 1979).
[7] See Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., 974 So.2d 1176, 1181 (Fla. 5th DCA 2008) (holding that a party cannot avoid the economic loss rule by suing non-professional employees). While we acknowledge the experience and skill both auto and aircraft mechanics possess, neither group meets the legal definition of a "professional." See id.
[8] Avior/Avtech's counsel's statement, however, that Cessna knowingly turned over to Avior and Avtech the Aircraft in a non-airworthy condition (in violation of FAA regulations) was not supported by the record and should not have been made.
[9] Tampa Farm Serv., Inc. v. Cargill, Inc., 356 So.2d 347 (Fla. 2d DCA 1978). The contracts in that case included conflicting terms of the Rules of the Grain and Feed Dealers National Association and the Florida Uniform Commercial Code.
[10] Parsons v. Motor Homes of Am., Inc., 465 So.2d 1285 (Fla. 1st DCA 1985).
[*] I do agree with the observation in footnote four of the majority opinion that if the tort claims are sustained, the damages calculation is problematic.