SCHEB, Acting Chief Judge.
Brynnwood Condominium I Association, Inc., plaintiff below, seeks reversal of an order dismissing with prejudice all counts of its complaint against the City of Clear-water. Brynnwood raises three points on appeal. However, we perceive these points as raising only one issue: whether a city, as a provider of water services, has the duty to furnish water which does not corrode its customers’ copper plumbing pipes? We answer the question in the negative and affirm.
The gravamen of Brynnwood’s complaint against Clearwater concerns the quality of water the city supplies. In late 1982 Brynnwood discovered multiple leaks in the copper tubing in its plumbing system. On *318 June 29, 1984, it filed a seven-count complaint seeking damages. Six counts were directed against Clearwater and one against U.S. Home Corporation, the developer of the Brynnwood Condominium complex.[1]
The six counts against Clearwater alleged causes of action sounding in tort, contract, and strict liability. Brynnwood claimed that the water Clearwater furnished its residents contained “high levels of chemicals which cause excessive corrosion of copper pipes, thereby causing multiple leaks in the pipes and increasing copper content in the water at the tap.” Brynn-wood asserted that it had suffered damages as a result of these leaks, including “plumbing repairs, structural repairs, and maintenance and repairs for water damage to individual units.” It claimed that Clear-water knew, or should have known, that the water supply contained high concentrations of corrosion-causing chemicals, the effect of which was to cause the damages suffered by Brynnwood. Further, Brynn-wood alleged that the city did not exercise due care in establishing and implementing a building code allowing the plumbing fixtures installed by the developer. Brynn-wood did not allege any personal injuries caused by the water’s quality.
Clearwater moved to dismiss the six counts of the complaint directed against it. At the hearing on the motion, the trial judge noted that all water contains some chemicals, yet the law only imposes a duty on the city to provide water fit for human consumption. Further, the judge observed, while delivery of water is an operational act not subject to sovereign immunity, the promulgation of a building code is a planning function under Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979). Then, the court dismissed the counts against Clearwater with prejudice. However, the court granted Brynn-wood twenty days to amend its complaint against Clearwater “on the sole ground that [Clearwater] has supplied water not fit for human consumption and that [Brynn-wood] has suffered damage from the same.” Brynnwood failed to amend its complaint against Clearwater. Instead, it filed a motion for reconsideration and rehearing. The trial court denied this motion and this appeal ensued.
Thus, we are confronted with the question of what duty, if any, a city has as a supplier of water to residential customers. We start with the basic proposition that a municipality is not an insurer or guarantor of the quality of water it furnishes. A municipality, however, “may be held liable for injuries resulting from its negligence in permitting its water supply to become contaminated or polluted, thereby causing illness or an epidemic.” 78 Am.Jur.2d Waterworks and Water Companies § 42 (1975). See also Horton v. Inhabitants of North Attleboro, 302 Mass. 137, 19 N.E.2d 15 (1939); 18 McQuillin, Municipal Corporations § 53.107 (3d Ed. 1984). In Florida it is the policy of the state to assure that safe drinking water is available. To this end a municipality which supplies water for public consumption must furnish potable drinking water, i.e., water fit for human consumption. § 403.-851-.864, Fla.Stat. (1983).
Brynnwood has not alleged that the water Clearwater supplies is unsafe for drinking purposes. Nor has it alleged that such water is unfit for such common domestic purposes as laundering clothes. Rather, it has asserted that it has incurred property damage because of high concentrations of corrosive-causing chemicals flowing through its pipes. Further, Brynnwood argues that it is not unreasonable to expect the city to treat the water in a manner which removes the corrosive chemicals.
The parties have not cited, nor have we found, any cases where a municipality has been required to add chemicals to otherwise safe drinking water to prevent corrosion of a property owner’s pipes. Cer *319 tainly, as the trial court noted, some chemicals occur naturally in water. Since Clear-water cannot be held liable as an insurer of water quality, we think it would be unreasonable to require it to infuse the water with elements to lessen the damage to the pipes which the developer installed. See Oakes Manufacturing Co. v. City of New York, 206 N.Y. 221, 99 N.E. 540, aff'd on rehearing, 206 N.Y. 749, 100 N.E. 414 (1912).
Finally, we agree with the trial court that adoption of codes and other ordinance making procedures are basic governmental policy-making processes for which a municipality is immune from liability. See Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla.1985); Commercial Carrier; Neumann v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA 1983). Thus, contrary to Brynnwood’s argument, Clearwater’s decision to adopt plumbing and building codes allowing the use of copper pipes does not render the city liable. See § 768.28, Fla. Stat. (1983).
Affirmed.
DANAHY and HALL, JJ., concur.

. U.S. Home Corporation is not a party to this action, since the count of the complaint against it was not dismissed.