COX, JACK S., Associate Judge.
 

 Trikon Sunrise Associates, LLC, appeals an Order of Final Summary Judgment in favor of the defendant, Mark L. Saltz. We reverse.
 

 FACTS
 

 Mark Saltz, individually, was sued for professional malpractice for architectural services performed while working for the architectural firm of Saltz Michelson Architects, Inc. The firm was also named as a separate defendant.
 

 The Complaint alleges that L.A. Fitness entered into a written contract with Saltz Michelson Architects, Inc., for professional services during the construction of a fitness center to be built by a general contractor, known as Brice, on property owned by Trikon that was leased to L.A. Fitness.
 

 On July 14, 2004, the architectural firm entered into its consulting agreement with L.A. Fitness, the tenant. The consulting agreement provided that the firm employs fully-qualified professional architects, and was unambiguous in describing the services to be performed by the architectural corporation through its individual qualified professional architects. Brice, the contractor, was not a party to this agreement, nor was the owner of the property or Mark Saltz, though Saltz signed the contract on behalf of the firm.
 

 Almost a year later, on May 20, 2005, the tenant, L.A. Fitness, and the general contractor, Brice, entered into an AIA Document A107-119 Form Contract. The owner of the property was not a party to the contract, neither was the architectural firm or Saltz. It is alleged that the contract specifically provided that the contractor would be solely responsible for and have control over the construction means, methods, techniques, sequences and procedures, and for safety precautions and programs in connection with the work on the project and that the architect would not be responsible for the contractor’s failure to perform in accordance with the contract documents.
 

 The contractor commenced construction on the fitness center on October 24, 2005, utilizing “tilt” wall or “tilt up” construction panels. Hurricane Wilma struck Florida while the process of constructing the walls was incomplete. The walls had been temporarily braced, but collapsed nonetheless.
 
 *317
 
 The collapse of the walls caused the project to be delayed.
 

 The owner of the property, Trikon, filed suit against the general contractor, architect, and engineer. In the Complaint, both Saltz Michelson Architects, Inc., and Mark Saltz were sued in separate counts for professional malpractice, asserting that they should have known that the temporary bracing was inadequate for hurricane force winds and that they breached a duty of care for failing to verify the details of the erection of the concrete panels, including the temporary bracing. Further, it was alleged that they failed to initiate a review and approval process of the erection details, including the temporary bracing, before allowing fabrication and erection of the panels to proceed, and failed to determine prior to erection whether the temporary bracing was sufficient to withstand wind and/or other forces likely to occur prior to completion.
 

 The architectural firm and Mark Saltz filed a joint Motion for Summary Judgment, arguing that the firm and Saltz “never had the duty alleged to have been breached, by contract or otherwise.” The motion also argued that negligence may consist of either doing something that a reasonably careful architect would not do under like circumstances or failing to do something that a reasonably careful architect would do under like circumstances and that no contracting party has any obligation greater than as promised in its contract, citing
 
 Lochrane Engineering, Inc. v. Willingham Realgrowth Investment Fund, Ltd.,
 
 552 So.2d 228 (Fla. 5th DCA 1989).
 

 In their Motion for Summary Judgment, various portions of the owner’s Complaint were referenced; among those allegations were the following:
 

 34.ARCHITECT agreed to provide its professional services with regard to design, planning and supervision of the construction of the FITNESS CENTER.
 

 35. ARCHITECT knew or should have known that high winds and/or adverse weather conditions specifically associated with Hurricane Wilma would exist at the PROJECT on or about October 24, 2005.
 

 36. ARCHITECT knew or should have known that the temporary bracing in place for the concrete panels was significantly inadequate for hurricane force winds.
 

 37. ARCHITECT knew or should have known that if the concreted panels erected by BRICE collapsed then, thereafter, the resulting demolition and re-construction would significantly delay and impair TRIKON’s development activities.
 

 38. ARCHITECT had a duty to exercise a degree of care and skill in the design, planning and supervision of the construction of the FITNESS CENTER as would be exercised by other reasonably skilled architects practicing in the South Florida area under the same or similar circumstances.
 

 39. ARCHITECT breached its duty for reasons including but not limited to: (1) failing to exercise that degree of care and skill as would be exercised by other reasonably skilled architects practicing in the South Florida area under the same or similar circumstances; (2) failing to verify or ascertain that the details of the erection of the concrete panels, including the temporary bracing, were prepared and sealed by a registered engineer; (3) failing to initiate a review and approval process of erection details, including the temporary bracing, before allowing fabrication and erection of the concrete panels to proceed; and (4) failing to determine, prior to erection of the
 
 *318
 
 concrete panels, whether the temporary bracing system which was utilized was sufficient to withstand or otherwise protect against wind and other forces that were likely to occur until connections to the permanent structural system were completed.
 

 The trial court denied the architectural firm’s Motion for Summary Judgment, but granted Summary Judgment in favor of Saltz.
 

 ANALYSIS
 

 A professional duty may arise in favor of a third party as a result of a matter of law or as a result of a contract between parties, or by virtue of a gratuitous undertaking. In this case, the architectural corporation and the individual architect allegedly had duties imposed upon them and those allegations are supported by Florida Statute and also because of the contract scope of work.
 

 Chapter 481, Florida Statutes (2005), “Architecture and Interior Design,” describes the services and responsibilities of an “Architect,” which specifically include services of “planning, providing preliminary study designs, drawings and specifications, job-site inspection, and administration of construction contracts.” § 481.203(6), Fla. Stat. (2005).
 

 Chapter 471, Florida Statutes (2005), “Engineering,” describes the services of an “Engineer,” including the engineer’s responsibility for inspection of the construction and the services provided involved in safeguarding life, health, and property. § 471.005(7), Fla. Stat. (2005).
 

 It would seem under the statutes that the two disciplines (engineering and architecture) are clearly distinct as are their duties and responsibilities. However, section 471.008(3), Florida Statutes (2005), acknowledges there are times in a project where an engineer may be performing architectural services that are purely incidental to her or his engineering practice and times when an architect may be performing engineering services that are purely incidental to her or his architectural practice.
 
 See
 
 § 471.003(3), Fla. Stat. (2005) (“[N]o licensed engineer whose principal practice is civil or structural engineering ... is precluded from performing architectural services which are purely incidental to her or his engineering practice, nor is any licensed architect ... precluded from performing engineering services which are purely incidental to her or his architectural practice.”).
 

 As a matter of law, professionals rendering professional services are to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances.
 
 See Moransais v. Heathman,
 
 744 So.2d 973, 975-76 (Fla.1999). Had the pleadings and the contract for services not referenced engineering services, the defendants may have been in a better position to argue that they had no duty as a result of the fact that temporary bracing used in the process and method of tilting up walls and holding them in place until they are permanently secure was not an architectural function or service, but was strictly an engineering duty (or a duty of the conti-actor).
 

 Consider the definition of “Architecture” pursuant to section 481.203(6):
 

 “Architecture” means the rendering or offering to render sendees in connection with the design and construction of a structure or group of structures which have as them principal purpose human habitation or use, and the utilization of space within and surrounding such structures.
 
 These services include planning, providing preliminary study designs, drawings and specifications,
 
 
 *319
 

 job-site inspection, and administration of construction contracts.
 
 (Emphasis added).
 

 “Engineering,” on the other hand, is defined under section 471.005(7) as follows:
 

 “Engineering” includes the term “professional engineering” and
 
 means any service
 
 or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning, and design of engineering works and systems, planning the use of land and water, teaching of the principles and methods of engineering design, engineering surveys, and the inspection of construction for the purpose of determining in general if the work is proceeding in compliance with drawings and specifications, any
 
 of which embraces such services
 
 or work, either public or
 
 private, in connection with any
 
 utilities,
 
 structures, buildings,
 
 machines,
 
 equipment, processes, work systems, projects,
 
 and industrial or consumer products or
 
 equipment of a mechanical,
 
 electrical, hydraulic, pneumatic, or thermal
 
 nature, insofar as they involve safeguarding life, health, or property; and includes such other professional services as may be necessary to the planning, progress, and completion of any engineering services.
 
 (Emphasis added).
 

 The allegations of the Complaint (paragraphs 35, 36, 37, and 39) are that the defendants did not just have architectural duties. Had the trial court at the time of the summary judgment been faced with a situation where no justiciable issues of material fact existed and, indisputably, the defendants had provided purely architectural services, a summary judgment for both defendants may have been proper. However, “engineering” duties may arise for an architect by virtue of contracting to perform engineering functions. The consulting agreement of July 14, 2004, potentially creates such a duty. In the consulting agreement, the corporate defendant is being engaged to perform those services as may be required under Exhibit “B” to the agreement. Exhibit “B” is the scope of services and compensation, which on its face shows that part of the services are
 
 “structural engineering $19,950.00.”
 
 Also, part of the record shows that the revised June 23, 2004 letter from the corporate defendant to the owner proposes that the scope of the services will include:
 
 “E. Structural Engineering including two site visits during construction $19,500,”
 
 and
 
 “I. Additional site visits per discipline (max. U hrs./visit) Architectural and Structural, Mechanical, Electrical & Plumbing $550/Visit $850/Visit/Disci-pline.”
 
 There clearly were issues of fact as to what the defendants’ responsibilities and duties were on the job-site relative to bracing the wall.
 

 As previously stated, section 471.003(3) anticipates that there will be times when a professional architect may be performing engineering services that are purely incidental to services as an architect. There remained a question of fact as to whether or not this corporate defendant and the individual defendant as architectural professionals were, in fact, conducting and providing services as an engineer relative to the temporary bracing.
 

 Appellant also argues that the trial court improperly ruled on an issue that was not alleged in the Motion for Summary Judgment with particularity and considered an argument that an individual architect who works for a corporation cannot be held individually liable for negligence for his services. With this, we
 
 *320
 
 agree. The Summary Judgment Motion did not specifically state that it was based upon a claim that the individual architect, Mark Saltz, could not be liable because he was merely an employee.
 

 In
 
 Moransais,
 
 744 So.2d at 977-78, our supreme court has made it clear that Florida law recognizes a cause of action against an individual for professional negligence irrespective of whether the individual practices through a corporation. Professionals may be personally and individually liable for any negligence committed by them while rendering professional services as an employee of a corporation.
 

 For the reasons set forth herein, the Order of Final Summary Judgment is reversed.
 

 Reversed and Remanded.
 

 CIKLIN and GERBER, JJ., concur.