DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ENRIQUE R. ANTEZANA, ANDRES CALERO, MICHAEL J. CHARLOT, LIDIETTE ESQUIVEL, AMELIA Z. MIGUELEZ, MARTHA PLANEY VALDEZ,** and **AMIR RICARDO VAZQUEZ,**
in their individual capacities and on behalf of
other similarly situated individuals,
Appellants,

v.

**KIMLEY-HORN & ASSOCIATES, INC.** and **CITY OF MIRAMAR,**
Appellees.

No. 4D2024-0486

[August 27, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Tuter, Judge; L.T. Case No. CACE23012261.

Jeffrey V. Mansell and Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, Leslie M. Kroeger and Diana L. Martin of Cohen Milstein Sellers & Toll, PLLC, Palm Beach Gardens, and J. Eric Romano of Romano Law Group, West Palm Beach, for appellants.

Michael A. Hanzman, Raquel M. Fernandez, Mitchell E. Widom, Kayla Hernandez and Shalia M. Sakona of Bilzin Sumberg Baena Price & Axelrod LLP, Miami, and Kara Rockenbach Link of Link & Rockenbach, PA, West Palm Beach, for appellee Kimley-Horn and Associates, Inc.

Norman C. Powell and Jordan Gary of Austin Pamies Norris Weeks Powell, PLLC, Fort Lauderdale, for appellee City of Miramar.

**ON MOTION FOR REHEARING**

PER CURIAM.

We deny Appellee Kimley Horn & Associates, Inc.'s "motion for rehearing or, in the alternative, for rehearing en banc or, in the alternative, for certification [to the Florida Supreme Court] of an issue of great public importance." We nonetheless sua sponte withdraw our previous opinion, and issue the following in its place.

Appellants ("Plaintiffs") appeal the trial court's orders dismissing with prejudice their amended class action complaint against appellees Kimley-Horn and Associates, Inc. ("Consultant") and the City of Miramar ("the City") (collectively, "Defendants"), in which Plaintiffs alleged the City supplied them with water that corroded their copper pipes. Plaintiffs argue dismissal was in error because the City owed them a duty to treat the water so that it would be non-corrosive, and Consultant owed them a duty to exercise reasonable care in analyzing the water and advising the City. We agree with Plaintiffs, in part, that dismissal with prejudice was not warranted and remand for further proceedings.

## Background

Plaintiffs represent a class of over 1,000 homeowners with properties located in a defined area within the City that receives water from the City's West Water Treatment Plant. They brought an action alleging that the water which the City had delivered to them from the water plant between 2016 to 2022 was improperly treated and had caused irreversible damage to all the copper pipes in the area.

### A. Plaintiffs' Amended Complaint

The amended complaint alleges the following facts.

The water plant receives groundwater and uses nanofiltration and reverse osmosis to treat the water. These processes remove various minerals, including calcium and sodium hydroxide (caustic soda or lye), which are necessary to create a coating inside copper pipes preventing their corrosion. The City failed to add back these minerals following treatment, which caused the finished water to be non-protecting of the copper pipes to corrosion, resulting in deep pits and pinholes through the walls of the copper pipes.

The City contracted with Consultant for professional planning and design engineering consulting services. Consultant analyzed the water plant's treated water and determined the alkalinity and hardness levels were below recommended levels, resulting in corrosive finished water. Consultant recommended the City include corrosion control inhibitors, but did not recommend that it add calcium carbonate to the finished water. The City did not make its water non-corrosive after receiving Consultant's report, analysis, and recommendations.

2

After residents complained to the City about premature plumbing failures, the City again contracted with Consultant to evaluate its finished water to provide residents with answers. In an apparent attempt to shield itself from liability for previous inadequate advice to the City, Consultant claimed that the finished water was not contributing to any accelerated corrosion but that potential non-water related causes contributed.

Plaintiffs alleged they could not have reasonably known that the City was providing them with corrosive water. The City represented to residents that it was not possible for the finished water to have caused damage to their pipes. The City advised residents to replace their pipes at their own expense and offered a program for residents to borrow up to $10,000 from the City to pay for the new pipes.

Plaintiffs brought six tort claims: three claims against the City— negligence, breach of implied warranty of fitness, and strict liability, and three claims against Consultant—professional malpractice, negligence, and negligent misrepresentation.

### i. Negligence Claim against the City

Plaintiffs alleged the City created a foreseeable zone of risk in improperly treating the water. Plaintiffs also claimed that the City—by testing the water for corrosiveness, adjusting its water treatment to make the water non-corrosive, and representing to the public that it tests for copper in the water—undertook a duty of providing Plaintiffs with water that would not corrode their copper pipes. Plaintiffs alleged the City breached this duty when it supplied corrosive water and failed to properly treat and test the water. Plaintiffs maintained that this breach caused damage to their copper pipes, requiring complete replacement.

### ii. Breach of Implied Warranty of Fitness and Strict Liability Claims against the City

Plaintiffs alleged the City impliedly warranted that the treated water was fit for the particular purpose of drinking, washing, and bathing, without causing damage to their real and personal property. They claimed the finished water was not fit for this particular purpose because it caused corrosion to their copper pipes.

Plaintiffs alleged the City sold finished water to Plaintiffs that was unreasonably dangerous and defective in that it could not be delivered to residences and businesses through copper pipes without causing

3

permanent damage. Plaintiffs asserted that no reasonable consumer would expect that the finished water would corrode copper plumbing.

### iii. Claims against Consultant

Plaintiffs' professional malpractice and negligence claims against Consultant are substantively similar. Plaintiffs contend Consultant undertook to render services for the City to protect Plaintiffs' copper pipes. Consequently, Plaintiffs argue, Consultant had a duty to analyze the treated water, advise the City that its water treatment measures caused corrosion to copper pipes, and recommend the City add calcium carbonate to the water. Plaintiffs alleged Consultant breached its duty by failing to provide such information with the degree of care, knowledge, and skill consistent with a professional planning and design engineering consultant. Plaintiffs claimed that Consultant's breach caused corrosion to their copper pipes.

Plaintiffs also alleged Consultant made a negligent misrepresentation in that Consultant supplied false or faulty information to the City in guiding the City and its customers in their business transactions.

### B. The Trial Court Grants Defendants' Motion to Dismiss With Prejudice

Defendants filed motions to dismiss, Plaintiffs responded, and Defendants replied. Following a hearing, the trial court granted the motions and dismissed the complaint with prejudice.

In granting the City's motion to dismiss, the trial court held: (1) the zone of risk theory does not extend to property damages, only to personal injuries; (2) municipalities do not have a statutory duty to maintain minerals or pH in water to prevent copper pipes from corroding; (3) municipalities do not have a common law duty to treat water to prevent damage to copper pipes; (4) the City did not breach an implied warranty of fitness, because the water's particular purpose was for human consumption, a claim not substantially different from the negligence claim; and (5) the City cannot be held strictly liable, because delivering potable water to residents that may damage their copper pipes is not unreasonably dangerous nor defective, as municipalities are only required to supply water fit for human consumption.

In granting Consultant's motion to dismiss, the trial court analyzed Plaintiffs' claims jointly. The court stated that the general rule is a professional owes a duty only to its contractual client, but the supreme

4

court recognized a limited exception in adopting Restatement (Second) of Torts section 552. Although section 552 applies when the professional supplies false information causing pecuniary loss, the trial court determined that the physical harm alleged is a pecuniary loss unrelated to the economic loss rule.

Specifically, the trial court found: (1) Plaintiffs failed to plead ultimate facts demonstrating that Consultant intended to supply information to them for their benefit and guidance, or knew that the City intended to do so, or that they detrimentally relied upon Consultant's advice; (2) Consultant's advice was intended to guide the City's decisions, not any conduct of Plaintiffs; (3) Plaintiffs' allegations demonstrate that Consultant did not create or control any physical zone of risk; (4) Plaintiffs failed to allege any harm which they had suffered in reliance on Consultant's advice; (5) Plaintiffs did not allege that they had taken an affirmative act based on Consultant's advice or what actions they would have taken to minimize or mitigate their damage; (6) Plaintiffs failed to allege a public duty which Consultant owed to them; and (7) limitations on the City's own duty necessarily constrains Consultant's purported duty.

This appeal follows.

## Analysis

"We review an order dismissing a complaint with prejudice de novo." *CF Dominicana Cigars, Inc. v. Am. Airlines, Inc.*, 388 So. 3d 9, 10 (Fla. 4th DCA 2024). "To survive a motion to dismiss, a complaint must allege 'sufficient ultimate facts' showing entitlement to relief." *Stein v. BBX Cap. Corp.*, 241 So. 3d 874, 876 (Fla. 4th DCA 2018) (quoting *MEBA Med. & Benefits Plan v. Lago*, 867 So. 2d 1184, 1186 (Fla. 4th DCA 2004)).

"When determining the merits of a motion to dismiss, a court may not go beyond the four corners of the complaint and must accept the facts alleged therein and exhibits attached as true, with all reasonable inferences drawn in favor of the pleader." *Jones v. Vasilias*, 359 So. 3d 10, 12 (Fla. 4th DCA 2023) (quoting *Regis Ins. Co. v. Mia. Mgmt., Inc.*, 902 So. 2d 966, 968 (Fla. 4th DCA 2005)).

**A. The Trial Court Erred in Dismissing Plaintiffs' Negligence Claim against the City**

While negligence has four elements, duty is the only point of contention in the instant case. *See Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015). "Whether a duty of care exists is to be determined solely by

the court." *Rehab. Ctr. at Hollywood Hills, LLC v. Fla. Power & Light Co.*, 299 So. 3d 16, 19 (Fla. 4th DCA 2020). "Duty 'is a minimal threshold legal requirement for opening the courthouse doors.'" *Saunders v. Baseball Factory, Inc.*, 361 So. 3d 365, 369 (Fla. 4th DCA 2023) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)).

The principle of duty may arise from four general sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *McCain*, 593 So. 2d at 503 n.2 (adopting Restatement (Second) of Torts § 285 (Am. L. Inst. 1965)).

When the source of a duty of care falls within the first three sources, "[t]he court must simply determine whether a statute, regulation, or the common law imposes a duty of care upon the defendant." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015). "[W]hen the duty is rooted in the fourth prong, factual inquiry into the existence of a duty is limited to whether the 'defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others.'" *Id.* at 389 n.4 (quoting *McCain*, 593 So. 2d at 502).

On appeal, Plaintiffs do not argue the City has a statutorily imposed duty. Thus, we turn first to judicial opinions.

### i. *Brynnwood*

The City relies heavily on *Brynnwood Condominium I Ass'n v. City of Clearwater*, 474 So. 2d 317 (Fla. 2d DCA 1985), for the proposition that it does not have a duty to treat water to prevent the corrosion of a property owner's pipes. In *Brynnwood*, residents sued a municipality in tort, contract, and strict liability because the municipality provided them with water containing "high levels of chemicals which cause excessive corrosion of copper pipes, thereby causing multiple leaks in the pipes." 474 So. 2d at 318.

The Second District held that "a municipality is not an insurer or guarantor of the quality of water it furnishes." *Id.* However, a municipality "may be held liable for injuries resulting from its negligence in permitting its water supply to become contaminated or polluted, thereby causing illness or an epidemic." *Id.* (quoting 78 Am. Juris. 2d *Waterworks & Water Cos.* § 42 (1975)). The court continued, "[i]n Florida it is the policy of the state to assure that safe drinking water is available. To this end a municipality which supplies water for public consumption must furnish

6

potable drinking water, i.e., water fit for human consumption." *Id.* (citing §§ 403.851–.864, Fla. Stat. (1983)).

The court further stated, "[t]he parties have not cited, nor have we found, any cases where a municipality has been required to add chemicals to otherwise safe drinking water to prevent corrosion of a property owner's pipes." *Id.* The court affirmed the trial court's dismissal of the complaint, because, as the municipality "cannot be held liable as an insurer of water quality, we think it would be unreasonable to require it to infuse the water with elements to lessen the damage to the pipes which the developer installed." *Id.* at 319.

### ii. Undertaker's Doctrine

On its face, *Brynnwood* seemingly precludes Plaintiffs' claim that the City could be held liable for supplying corrosive water that is otherwise safe for human consumption. However, Plaintiffs assert that the City undertook a duty to treat its water to render it non-corrosive, and thus, a duty arose from the general facts of the case.

"Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the 'undertaker'—thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003). "This maxim, termed the 'undertaker's doctrine,' applies to both governmental and nongovernmental entities." *Id.* (footnotes omitted). "[T]he undertaker's doctrine is a well-developed, entrenched aspect of Florida tort law." *Wallace v. Dean*, 3 So. 3d 1035, 1051 (Fla. 2009). The doctrine provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.* (emphasis removed) (quoting Restatement (Second) of Torts § 323 (Am. L. Inst. 1965)); *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 560 (Fla. 4th DCA 2008).

Plaintiffs contend *Slemp v. City of North Miami*, 545 So. 2d 256 (Fla. 1989), offers an exception to *Brynnwood* where the municipality undertakes to provide a service. In *Slemp*, a municipality installed a storm sewer pump system to thwart periodic flooding. *Id.* at 257. After residents sued the municipality alleging the storm sewer system itself caused damage (the residents' home was flooded), the district court held that "the city owed no statutory or common law duty of care to individual property owners to protect against flooding due to natural occurrences." *Id.*

The supreme court reversed, holding, "[o]nce the city has undertaken to provide such protection [from flooding due to natural causes], by building a storm sewer pump system, for example, it assumes the responsibility to do so with reasonable care." *Id.* at 258. The court concluded, "[i]f the city negligently fails to properly maintain or operate the system, it can be held liable for damage caused by that failure." *Id.*

Several years after *Brynnwood*, the Second District followed *Slemp* and determined that a governmental entity could be held liable for undertaking to provide a service, even if that entity lacked a statutory or general duty. *Nanz v. Sw. Fla. Water Mgmt. Dist.*, 617 So. 2d 735, 736 (Fla. 2d DCA 1993). The court reversed the dismissal of a complaint against a county, even though the county did not have a statutory duty to manage and control flood waters, because the county "can be held liable if as alleged it is negligently maintaining, controlling or operating a drainage system." *Id.* (citing *Slemp*, 545 So. 2d at 256).

Per *Slemp* and its progeny, Plaintiffs are correct that *Brynnwood* does not present an insurmountable obstacle to their claims against the City, because they argue the City's alleged undertaking established a duty of care. As alleged, the City undertook to treat the corrosiveness of its water when it implemented a corrosion inhibitor feed system. Thus, the City arguably assumed a duty to treat the water with reasonable care. The City failed to add the necessary minerals back to its treated water to render it non-corrosive. This alleged failure to exercise reasonable care by adding back necessary minerals to the treated water increased the risk of Plaintiffs' harm because that failure caused serious corrosion of Plaintiffs' copper pipes, requiring their replacement.

Taking the complaint's allegations as true, and drawing all reasonable inferences in Plaintiffs' favor, the City undertook to render services to

8

eliminate the water's corrosiveness, which the City should have recognized as necessary for the protection of Plaintiffs' copper pipes. *See Wallace*, 3 So. 3d at 1051. Per the undertaker's doctrine, the City may be held liable for Plaintiffs' damage, if as alleged, the City negligently maintained, controlled, or operated the water treatment system. *See Nanz*, 617 So. 2d at 736.

### iii. *Breach of Implied Warranty of Fitness and Strict Liability*

Plaintiffs' breach of implied warranty of fitness and strict liability claims do not rely on negligence or the undertaker's doctrine. The court in *Brynnwood* wrestled with these same claims and affirmed their dismissal under similar circumstances. 474 So. 2d at 319. We likewise affirm the dismissal of these claims against the City with prejudice.

### B. The Trial Court Erred in Dismissing Plaintiffs' Professional Malpractice and Negligence Claims Against Consultant

Plaintiffs brought professional malpractice and negligence claims against Consultant. Plaintiffs aver that these claims are "substantially the same," and their elements and types of harm alleged are the same. *See Palm Ave. Hialeah Tr. v. Eisenberg*, No. 24-cv-23586, 2025 WL 821334, *7 (S.D. Fla. Mar. 14, 2025).

In *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990) the Court adopted Restatement (Second) of Torts § 552 (1977) in holding that a professional's liability for negligence extends to third persons which the professional "knows" will rely on the professional's services. In its opinion, the court quoted with approval *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 214–15, 367 S.E.2d 609, 617 (1988), in which the North Carolina Supreme Court explained Section 552 "recognizes that liability should extend not only to those with whom the [professional] is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely."

Nonetheless, § 552 does not supply "the *only* potential source of duty in this case." Section 552 concerns claims of negligent misrepresentation, not professional malpractice or negligence. *See Moransais v. Heathman*, 744 So. 2d 973, 982 (Fla. 1999), *receded from on other grounds, Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013) (noting that section 552 "set[s] forth the circumstances for negligent misrepresentation"). Rather, the undertaker doctrine is the alleged source of Consultant's duty in this case.

9

Section 324A of the Restatement (Second) of Torts applies the undertaker doctrine to contract-based negligence claims by third parties lacking privity with the tortfeasor. *See Clay Elec.*, 873 So. 2d at 1186; Restatement (Second) of Torts § 324A (Am. L. Inst. 1965). "Florida recognizes a common law cause of action against professionals based on their acts of negligence despite the lack of a direct contract between the professional and the aggrieved party." *Moransais*, 744 So. 2d at 984. "A professional duty may arise in favor of a third party as a result of a matter of law or as a result of a contract between parties, or by virtue of a gratuitous undertaking." *Trikon Sunrise Assocs., LLC v. Brice Bldg. Co.*, 41 So. 3d 315, 318 (Fla. 4th DCA 2010).

The elements for professional malpractice and negligence are (1) duty, (2) breach, (3) causation, and (4) damages. *See Recreational Design & Constr. Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 867 F. Supp. 2d 1234, 1237 (S.D. Fla. 2011) (citing *Moransais*, 744 So. 2d at 975 n.3).

"[W]here the negligent party is a professional, the law imposes a duty to perform the requested services in accordance with the standard of care used by similar professionals in the community under similar circumstances." *Moransais*, 744 So. 2d at 975–76. "[A]n engineer is considered a professional, and, accordingly, has been held liable as such for failure to exercise due care in rendering professional services." *Moransais*, 744 So. 2d at 976 (internal citation omitted); *Sunset Beach Invs., LLC v. Kimley-Horn & Assocs., Inc.*, 207 So. 3d 1012, 1014 (Fla. 4th DCA 2017) ("We conclude that a licensed engineer could be subject to a claim for professional negligence, as engineering is a profession which requires special education, training, [and] skill.").

The trial court erred in dismissing these claims. Plaintiffs sufficiently alleged that Consultant undertook to render services for the City to protect Plaintiffs' copper pipes. Plaintiffs alleged sufficient facts demonstrating that Consultant engages in the engineering profession when it provided "professional planning and design engineering consulting services." Plaintiffs also sufficiently alleged that Consultant owed Plaintiffs a duty to analyze the treated water, advise the City that its water treatment measures caused corrosion to copper pipes, and recommend the City add calcium carbonate to the water. Plaintiffs alleged that information from the Consultant's reports were included in mandatory reports required by federal and state regulations to be distributed to City residents, including Plaintiffs. Moreover, Plaintiffs alleged that Consultant attempted to cover up its negligence by issuing another report finding that the City's method of water treatment was not the cause of Plaintiffs' corroded pipes.

Plaintiffs further alleged sufficient ultimate facts demonstrating Consultant's breach of said duty. Plaintiffs have also sufficiently alleged that Consultant's breach actually and proximately caused their damages because the corrosive water, for which Consultant should have adequately advised the City to remediate, damaged Plaintiffs' water pipes, requiring their complete replacement. Accordingly, if Plaintiffs can prove their allegations, Consultant may be held liable for professional malpractice and negligence.

We otherwise affirm, without further discussion, the trial court's dismissal of Plaintiffs' negligent misrepresentation claim with prejudice.

## Conclusion

We reverse the trial court's dismissal of Plaintiffs' negligence claim against the City because Plaintiffs alleged sufficient ultimate facts of entitlement to relief under the theory that the City *undertook* a duty to treat its water to render it non-corrosive. We affirm the dismissal of Plaintiffs' breach of implied warranty and strict liability claims against the City because Plaintiffs have not distinguished those claims from those in *Brynnwood*.

Further, we reverse the trial court's dismissal of Plaintiffs' professional malpractice and negligence claims against Consultant because Plaintiffs alleged sufficient ultimate facts of entitlement to relief. We affirm the dismissal of Plaintiffs' negligent misrepresentation claim against Consultant without discussion.

We do not express any opinion on whether Plaintiffs are likely to prevail at further stages of this litigation. Accordingly, we affirm in part and reverse in part the trial court's orders dismissing Plaintiffs' complaint with prejudice and remand for further proceedings.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

WARNER, FORST and KLINGENSMITH, JJ., concur.

\*      \*      \*

***FINAL UPON RELEASE; NO MOTION FOR REHEARING WILL BE ENTERTAINED; MANDATE ISSUED SIMULTANEOUSLY WITH OPINION.***